# FOR PUBLICATION



**FILED**

Aug 15 2012, 8:42 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**DAWN R. ROSEMOND**
**LISA D. UPDIKE**
Barnes & Thornburg LLP
Fort Wayne, Indiana

**ALAN K. MILLS**
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**STEPHEN J. PETERS**
**RORY O'BRYAN**
**DAVID I. RUBIN**
Harrison & Moberly, LLP
Indianapolis, Indiana

**MICHAEL J. ALERDING**
**SCOTT A. KREIDER**
Alerding Castor Hewitt, LLP
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JPMCC 2006-CIBC14 EADS PARKWAY, LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 15A01-1201-PL-23 |
| | ) | |
| DBL AXEL, LLC, DAVID RICHMAN, | ) | |
| LYNETTE GRIDLEY, AS TRUSTEE | ) | |
| OF THE HARTUNIAN FAMILY | ) | |
| TRUST (u/d/t dated November 8, 1989), | ) | |
| BLACK DIAMOND REALTY, LLC, GARY | ) | |
| HARTUNIAN, and TYSON KORKMAZ, | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE DEARBORN SUPERIOR COURT
The Honorable Jonathan N. Cleary, Judge
Cause No. 15D01-0904-PL-12

**August 15, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

JPMCC 2006-CIBC14 Eads Parkway, LLC ("JPMCC") appeals the trial court's partial denial of its motion for summary judgment and partial grant of summary judgment in favor of DBL Axel, LLC ("DBL"); David Richman; Lynette Gridley, as Trustee of the Hartunian Family Trust; Black Diamond Realty, LLC ("Black Diamond"); Gary Hartunian; and Tyson Korkmaz.[1] JPMCC raises the following three issues for our review:

1. Whether the trial court erred when it denied JPMCC's motion for summary judgment on DBL's complaint for declaratory judgment;

2. Whether the trial court erred when it denied JPMCC's motion for summary judgment and granted DBL's motion for summary judgment on JPMCC's various tort claims against DBL; and

3. Whether the trial court erred when it granted summary judgment for Richman and the Hartunian Family Trust on JPMCC's claim that they breached their guaranty.

We affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

DBL is a single-asset company. In 2005, Richman held a ten-percent membership interest in DBL and the Hartunian Family Trust held a ninety-percent membership interest. We have discussed the relationship between DBL and JPMCC as follows:

> DBL received a loan which was secured by a Mortgage and Security Agreement (the "Mortgage") in certain real property in Dearborn County commonly known as Dearborn Plaza in Lawrenceburg, Indiana (the

---

[1] Black Diamond, Gary Hartunian, and Tyson Korkmaz have not filed briefs in this appeal. Nonetheless, because they were parties in the trial court they are parties in this court. Ind. Appellate Rule 17(A).

"Property"), which was eventually assigned to [JPMCC²].  In March 2008, the City filed a Complaint for the Appropriation of Real Estate to acquire a portion of the Property and two temporary right-of-way easements ["the condemnation action"].  DBL defaulted on the loan in August 2008.

On March 6, 2009, DBL and the City entered into the Settlement Agreement [in a separate civil action brought by DBL against the City] in which the City agreed to pay DBL $1,725,600 in installments of $1,005,600 immediately, $360,000 on or before January 5, 2010, and $360,000 on or before January 5, 2011, as nuisance damages [the "Settlement Agreement" or "the nuisance award"].  On March 9, 2009, DBL and the City filed Agreed Findings and Judgment (the "Agreed Judgment") on the City's Complaint for the Appropriation of Real Estate, and the City obtained the portions of the Property and easements it sought and agreed to pay $224,600 to DBL and [JPMCC] ["the condemnation award"].  Also in March 2009, DBL negotiated a check from the City for $1,005,600.  On April 30, 2009, DBL filed a complaint [against JPMCC] requesting a declaratory judgment as to how the $224,600 would be applied to its mortgage . . . .

DBL Axel, LLC v. LaSalle Bank Nat'l Ass'n, 946 N.E.2d 1173, 1174 (Ind. Ct. App. 2011).  As collateral, Richman and the Hartunian Family Trust signed a limited guaranty of the Mortgage and other loan documents (and are hereafter referred to collectively as "the Guarantors").³  Richman eventually assigned his membership interest in DBL to Korkmaz.

During the course of DBL's declaratory judgment action, the court appointed a receiver to take possession of and to manage the Property.  JPMCC learned of the $1,725,600 nuisance award DBL had received from the City from the receiver.

---

² Although JPMCC was not the original lender and was not a party at the time of the trial court proceedings, it is the current holder of the note and all related interests.  For ease of discussion, rather than referring to each holder of the note at the time of a particular event, we simply refer to JPMCC.

³ The Guarantors and DBL have filed separate briefs.  But each brief incorporates different parts of the other brief.  As a result, juggling the two briefs to read them together has the feel of watching a ping-pong match.

On June 1, 2009, JPMCC filed its Answer, Counterclaim against DBL, and Third-Party Complaint against the Guarantors, which it amended on September 24, 2010. JPMCC alleged the following ten counts in its amended counterclaim and third-party complaint:

- Count I:  breach of contract by DBL based on its failure to pay the amounts due and owing on the loan, including DBL's failure to pay over to JPMCC the $224,600 condemnation award and the $1,725,600 nuisance award.

- Count II:  theft and conversion by DBL when DBL refused to immediately remit to JPMCC the condemnation award and the nuisance award.

- Count III:  constructive fraud by DBL when it did not immediately inform JPMCC of the nuisance award.

- Count IV:  actual fraud by DBL when it concealed the existence of the nuisance award from JPMCC.

- Count V:  fraudulent conveyance by DBL when it disbursed the first two installments[4] of the City's nuisance payments to its members, attorneys, and a lower priority lien holder on the Property, Black Diamond.

- Count VI:  criminal mischief when DBL disbursed the first two installments of the City's nuisance payments without JPMCC's consent.

- Count VII:  breach of guaranty against the Guarantors.

- Count VIII:  a request for replevin of the Property.

- Count IX:  a request for foreclosure on the Property.

---

[4]  The City's third installment of the nuisance award was remitted by DBL to the trial court during the course of the proceedings, and it remains there.

4

- Count X: a request for the immediate appointment of a receiver.

Appellees' App. at 57-74.[5]

On January 31, 2011, the parties filed cross-motions for summary judgment. On May 12, the trial court held a hearing on the parties' numerous pending motions, including the summary judgment requests. On December 16, the trial court entered the following final judgment: judgment for JPMCC and against DBL on JPMCC's Counts I, VIII, and IX (the "Breach of Contract Claims"); judgment for DBL and against JPMCC on JPMCC's Counts II, III, IV, V, VI, and X (the "Tort Claims"); judgment for the Guarantors and against JPMCC on JPMCC's breach of guaranty claims (the "Breach of Guaranty Claims"); and judgment against JPMCC on JPMCC's request for summary judgment on DBL's complaint for declaratory judgment. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

JPMCC appeals the trial court's denial of its motion for summary judgment on DBL's declaratory judgment action, on the Tort Claims JPMCC asserted against DBL, and on the Breach of Guaranty Claims it asserted against the Guarantors.[6] Our standard of review for summary judgment appeals is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the

---

[5] It is unclear why the amended complaint appears in the Appellees' Joint Appendix rather than the Appellant's Appendix.

[6] Neither DBL nor the Guarantors appeal any part of the trial court's summary judgment order. Indeed, to the extent that their arguments call into question the trial court's judgment against them, those arguments are not raised in the briefs as cross-appeal issues. See Ind. Appellate Rule 9(D). Accordingly, we conclude that DBL's and the Guarantor's arguments are wholly in response to JPMCC's appellate arguments and are not intended to challenge the trial court's judgment.

parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted). The party appealing from a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. Knoebel v. Clark County Superior Court No. 1, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009). Where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo. Crum v. City of Terre Haute ex rel. Dep't of Redev., 812 N.E.2d 164, 166 (Ind. Ct. App. 2004).

Further, much of this appeal is based on the interpretation of written contracts. Our standard of review for interpreting the parties' written contracts is de novo. Gerstbauer v. Styers, 898 N.E.2d 369, 379 (Ind. Ct. App. 2008). The goal of contract interpretation is to ascertain and enforce the parties' intent as manifested in their contracts. See Gregg v. Cooper, 812 N.E.2d 210, 215 (Ind. Ct. App. 2004), trans. denied. To that end, we construe a contract as a whole and consider all of the provisions of the contract, not just individual words, phrases, or paragraphs. See id. An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. Id. However, when a contract is clear and unambiguous,

6

the language must be given its plain meaning.  See, e.g., Tippecanoe Valley Sch. Corp. v.

Landis, 698 N.E.2d 1218, 1221 (Ind. Ct. App. 1998), trans. denied.

**Issue One:  The Declaratory Judgment Action**

JPMCC first challenges the trial court's denial of its request for summary

judgment on DBL's complaint for declaratory judgment.   In its complaint, DBL

requested that the trial court interpret the parties' loan documents to determine the

amount of the $224,600 condemnation award that DBL had to remit to JPMCC and how

any such amount would be applied to the loan.

This issue is controlled by the following paragraphs of the Mortgage agreement:

Section 1.1.   PROPERTY MORTGAGED.   Borrower does hereby
irrevocably, unconditionally and absolutely mortgage, grant, bargain, sell,
pledge, enfeoff, assign, warrant, transfer and convey to Lender (with power
of sale), and does hereby grant a first priority security to Lender in, the
following property, rights, interests and estates now owned, or hereafter
acquired, by Borrower . . . :

* * *

(f)   Condemnation Awards.  All awards or payments, including
interest thereon, which may heretofore and hereafter be made with respect
to the Property, whether from the exercise of the right of eminent domain
. . . , or for a change of grade, or for any other injury to or decrease in the
value of the Property[.]

* * *

Section 2.1   DEBT.  This Security Instrument and the grants, assignments
and transfers made in Article 1 are given for the purpose of securing the
following, in such order of priority as Lender may determine in its sole
discretion . . . :

(a)   the payment of the indebtedness . . . ;

(b)   the payment of interest, default interest, late charges and other
sums . . . ;

7

(c)     the payment of all other moneys agreed or provided to be paid by Borrower . . . ;

(d)     the payment of all sums advanced pursuant to this Security Instrument to protect and preserve the Property . . . ; and

(e)     the payment of all sums advanced, costs and expenses incurred, and processing fees charged by Lender in connection with the Debt or any part thereof . . . .

\* \* \*

Section 3.4   CONDEMNATION.   Borrower shall promptly give Lender notice of the actual or threatened commencement of any condemnation or eminent domain proceeding and shall deliver to Lender copies of any and all papers served in connection with such proceedings.  Lender is hereby irrevocably appointed as Borrower's attorney-in-fact, coupled with an interest, with exclusive power to collect, receive and retain any award or payment for said condemnation or eminent domain and to make any compromise or settlement in connection with such proceeding, subject to the provisions of this Security Instrument.  Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Borrower shall continue to pay the Debt at the time and in the manner provided for its payment in the Note and in this Security Instrument and the Debt shall not be reduced until any award or payment therefor shall have been actually received and applied by Lender, after the deduction of expenses of collection, to the reduction or discharge of the Debt.  Lender shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided herein or in the Note.  Borrower shall cause the award or payment made in any condemnation or eminent domain proceeding, which is payable to Borrower, to be paid directly to Lender.  Lender may apply any award or payment to the reduction or discharge of the Debt whether or not then due and payable (such application to be free from any prepayment consideration provided in the Note, except that if an Event of Default, or any event which with notice and/or the passage of time, or both, would constitute an Event of Default, has occurred, then such application shall be subject to the full prepayment consideration computed in accordance with the Note).  If the Property is sold, through foreclosure or otherwise, prior to the receipt by Lender of the award or payment, Lender shall have the right, whether or not a deficiency judgment on the Note shall

8

have been sought, recovered or denied, to receive the award or payment, or a portion thereof sufficient to pay the Debt.

Appellant's App. at 308-09, 311-12, 320 (emphases added; original emphasis removed). According to JPMCC, those provisions, and especially Section 3.4, are an unambiguous conveyance of any condemnation award received by DBL to JPMCC.[7]

DBL responds by noting first that Section 3.4 requires JPMCC to act as DBL's attorney-in-fact in any condemnation proceedings and, second, that any condemnation award that is to be applied to the loan must be net of expenses of collection (namely, DBL's $580,000 in attorneys' fees). According to DBL's first argument, because JPMCC was the attorney-in-fact, JMPCC had an affirmative duty "to defend [DBL in] the Condemnation Proceeding." DBL's Br. at 27. And because JPMCC instead "le[ft] DBL to fend for itself," DBL continues, JPMCC waived its right to a full recovery under Section 3.4. See id.

This argument is not clear. Indeed, it reads as if DBL has confused an attorney-in-fact with an attorney-at-law. An attorney-in-fact is simply "a legal agent," whereas an attorney-at-law is a lawyer. Black's Law Dictionary 124 (7th ed. 1999). The "attorney-in-fact" language of Section 3.4 merely makes JPMCC the agent in charge of receiving any condemnation proceeds otherwise payable to DBL and gives JPMCC the authority to approve any condemnation settlement award. That language does not impose a duty on

---

[7] JPMCC also references the default provisions of the Mortgage as support for its position. But in light of the language quoted above, we need not consider the default provisions. We also do not address JPMCC's argument that a supposedly unambiguous contract can never be challenged via declaratory judgment (and we need not address DBL's response that JPMCC's argument deprives DBL of its right to have a court declare whether a contract is unambiguous). Neither do we address JPMCC's suggestion that DBL somehow acquiesced in or waived its response to JPMCC's interpretation of the Mortgage simply because DBL acknowledges the underlying validity of that document. Finally, insofar as JPMCC suggests that DBL somehow did not preserve the arguments we address on appeal, that suggestion is unfounded.

JPMCC to represent DBL in any proceedings involving the Property, and no reasonable person would read Section 3.4 to create such an obligation.

Neither do we agree with DBL's second argument, that JPMCC is only entitled to receive the condemnation proceeds net of DBL's expenses. Section 3.4 describes the lender-borrower relationship in the event of a government taking. It does not describe the borrower-government relationship. Pursuant to the lender-borrower relationship, during any condemnation proceedings the borrower must continue to make timely payments on the debt. The lender is entitled to any and all condemnation awards, and the debt may be reduced or discharged upon the lender's receipt of the award.

However, before the lender applies the condemnation award to the debt, the lender is entitled to first deduct its "expenses of collection." Appellant's App. at 320. In the full context of Section 3.4, the "expenses of collection" language unambiguously applies only when the lender incurs expenses of collection against the borrower due to the borrower's failure to timely remit the condemnation award to the lender. It does not apply to the borrower's expenses of defending itself in the underlying condemnation proceedings.[8]

Thus, we agree with JPMCC that the plain language of Section 3.4 does not require JPMCC to represent DBL in any legal proceedings nor does that language entitle DBL to any reimbursement for DBL's expenses in defending the Property. Further, insofar as DBL asserts that the language of Section 3.4 or any other part of the Mortgage entitles DBL to control how JPMCC will distribute the condemnation award, DBL is

---

[8] We are likewise not persuaded by DBL's additional argument that it is entitled "to offset, against interest accrued or paid at the Note rate, any part of the Condemnation Payment that constitutes interest paid by the condemning authority from the date of taking through the date of actual payment." DBL's Br. at 28.

10

incorrect. Sections 1.1(f), 2.1, and 3.4 expressly and unambiguously authorize JPMCC to use its own discretion in applying the award to the loan debt. Id. at 308-09, 311-12, 320. We note, however, that DBL would be entitled to an explanation, after the fact, showing how JPMCC applied the award.

Having determined that the plain language of the Mortgage favors JPMCC on each of DBL's assertions in its declaratory judgment complaint, we next turn to DBL's alternative argument that, notwithstanding that plain language, the common law requires JPMCC to reimburse DBL for its attorney's fees from the underlying condemnation proceeding. In support of its alternative argument, DBL cites the Restatement (Third) of Property: Mortgages, § 4.7 (1997) (the "Restatement"). According to that section of the Restatement:

> (a) Unless a different disposition is provided in the mortgage, the mortgagee has a right to the following funds paid on account of loss or damage to the mortgaged real estate, to the extent that the mortgagee's security has been impaired by the loss or damage, as defined in § 4.6(c):
>
> > (1) the proceeds paid by a casualty insurer due to the occurrence of an insured loss to the real estate, if the mortgagor promised the mortgagee, in the mortgage or otherwise, to purchase the insurance; and
> >
> > (2) an award resulting from a taking of all or part of the real estate under power of eminent domain, or the proceeds of a sale to a governmental body in lieu of such taking.
>
> (b) Unless the mortgage effectively provides the contrary, if restoration of the loss or damage described in Subsection (a) is reasonably feasible within the remaining term of the mortgage with the funds received by the mortgagee, together with any additional funds made available by the mortgagor, and if after restoration the real estate's value will equal or exceed its value at the time the mortgage was made, the mortgagee holds the funds received subject to a duty to apply them, at the mortgagor's request and upon reasonable conditions, toward restoration. The mortgagee

11

must credit toward the obligation secured by the mortgage any such funds not so applied.

That provision of the Restatement does not apply here.[9] First, DBL is seeking reimbursement of its attorney's fees, not the costs of restoring the Property. Second, DBL has offered no evidence to demonstrate that applying the condemnation award here to restoring the Property would make the Property's value "equal or exceed its value at the time the mortgage was made." Restatement § 4.7(b). Third, the Restatement recognizes that the mortgagee— JPMCC—"holds the funds received subject to a duty to apply them, at the mortgagor's [DBL's] request and upon reasonable conditions, toward restoration." Id. DBL has made no showing that any of those circumstances are met by the facts of this case.

In sum, JPMCC met its burden of showing that it was entitled to summary judgment on DBL's complaint for declaratory judgment, and DBL has made no showing that a genuine issue of material fact precludes such judgment. Thus, the trial court erred when it denied JPMCC's motion for summary judgment on DBL's complaint for declaratory judgment. We reverse the trial court's judgment and direct the court to enter final judgment for JPMCC on DBL's complaint.

## Issue Two: JPMCC's Tort Claims

JPMCC next argues that the trial court erred when it denied JPMCC's motion for summary judgment on the Tort Claims and instead granted summary judgment on those claims to DBL. In support of the trial court's judgment, DBL contends that the Tort

---

[9] DBL's brief ignores the language of Section 4.7 and instead quotes from the comments to that section. We are not persuaded that the commentary is materially more helpful than the plain language of Section 4.7, and we restrict our analysis accordingly.

Claims cannot stand because they are based on DBL's contractual relationship with JPMCC, not on facts independent of that contractual relationship. As such, DBL continues, the Tort Claims were merely repackaged breach-of-contract claims.

In addition to its Breach of Contract Claims, JPMCC alleged that DBL's failure to timely remit the condemnation and nuisance awards to JPMCC constituted theft, conversion, constructive fraud, actual fraud, fraudulent conveyance, and criminal mischief. Each of these allegations is based on JPMCC's interpretation of the Mortgage, in which JPMCC is entitled to those monies. The trial court agreed with JPMCC's interpretation of the Mortgage when it entered summary judgment in favor of JPMCC on the Breach of Contract Claims. DBL does not appeal that judgment.

But a party may not restyle a breach-of-contract claim as a tort claim simply to obtain additional damages. French-Tex Cleaners, Inc. v. Cafaro Co., 893 N.E.2d 1156, 1167 (Ind. Ct. App. 2008). Where the source of a party's duty to another arises from a contract, "tort law should not interfere." Greg Allen Const. Co. v. Estelle, 798 N.E.2d 171, 175 (Ind. 2003). "[T]he question is not whether [the plaintiffs] have, as we assume, adequately pled their tort claims, but, rather, whether [the defendant] is alleged to have done anything that constituted an independent tort if there were no contract." Koehlinger v. State Lottery Comm'n of Ind., 933 N.E.2d 534, 542 (Ind. Ct. App. 2010) (quotation omitted), trans. denied. Further, "the Indiana legislature did not intend to criminalize bona fide contract disputes." French-Tex Cleaners, 893 N.E.2d at 1168.

Nonetheless, "[t]o the extent that a plaintiff's interests have been invaded beyond mere failure to fulfill contractual obligations, a tort remedy should be available." Greg

Allen Const. Co., 798 N.E.2d at 173. This court has applied this rule in various contexts. For example, to show both a breach of contract and fraud, "a plaintiff . . . must prove that the breaching party committed the separate and independent tort of fraud and that such fraud resulted in injury distinct from that resulting from the breach of contract." Dean V. Kruse Found., Inc. v. Gates, 932 N.E.2d 763, 768 (Ind. Ct. App. 2010), trans. denied. And to prevail on a claim of conversion, "the plaintiff must show that the defendant was aware that there was a high probability that its control over the property was unauthorized." Id. at 769.

Here, to avoid the general rule that its Tort Claims are prohibited, JPMCC first asserts that DBL's refusal to remit the condemnation and nuisance awards to JPMCC was such a blatant violation of the parties' contractual relationship that the refusal rose to the level of a tort. Regarding the condemnation award, upon receipt of the award from the City DBL filed its declaratory judgment action and deposited the award with the trial court.[10] And regarding the nuisance award, DBL asserted that it did not believe that the nuisance award was a "condemnation" payment owed to JPMCC pursuant to Section 1.1(f) and Section 3.4. See DBL's Br. at 13-26. In light of that belief, DBL disbursed the first two installments of the nuisance award to its members, attorneys, and Black Diamond. It is undisputed that DBL disbursed those two installments before April 20, 2010. DBL deposited the third installment with the trial court.

---

[10] JPMCC notes that DBL first deposited the condemnation award in its own account, and then in its attorney's account, before depositing it with the trial court. But the City mistakenly wrote the check to only DBL and not to both DBL and JPMCC. Thus, we are not persuaded that the fact that DBL held the proceeds for a brief time before surrendering them to the trial court is meaningful.

14

Those facts do not demonstrate a triable issue on DBL's mens rea for any of the alleged torts. DBL's surrender of the condemnation award and the third installment of the nuisance award to a neutral third party—the trial court—in the course of its declaratory judgment action and in response to JPMCC's counterclaim demonstrates only that the right to those funds was in dispute. See, e.g., Coffel v. Perry, 452 N.E.2d 1066, 1069 (Ind. Ct. App. 1983); see also French-Tex Cleaners, 893 N.E.2d at 1168 ("the Indiana legislature did not intend to criminalize bona fide contract disputes."). It does not demonstrate the degree of culpability necessary to establish any of the Tort Claims.

Neither does DBL's erroneous distribution of the first two installments of the nuisance award to entities other than JPMCC demonstrate that DBL committed a tort. Again, DBL asserted that it disbursed the first two installments of the nuisance award to entities other than JPMCC because it did not believe that the nuisance award was a "condemnation" payment owed to JPMCC pursuant to Section 1.1(f) and Section 3.4. See DBL's Br. at 13-26. DBL's belief was, as a matter of law, incorrect.

On April 20, 2010, our supreme court held that inverse condemnation is the "only remedy" for a government's damage to the plaintiff's property, in the absence of formal proceedings initiated by the government, even though the action may be styled as a nuisance or some other property-related tort. Murray v. City of Lawrenceburg, 925 N.E.2d 728, 732-33 (Ind. 2010). And even though Murray was announced by our supreme court five years after DBL and JPMCC entered into the Mortgage, "[i]n general, pronouncements of common law made in rendering judicial opinions of civil cases have retroactive effect unless such pronouncements impair contracts made or vested rights

15

acquired in reliance on an earlier decision." Sink & Edwards, Inc. v. Huber, Hunt & Nichols, Inc., 458 N.E.2d 291, 295 (Ind. Ct. App. 1984). Murray did not overturn any earlier decisions, expressly or impliedly. Moreover, neither DBL nor the Guarantors make any suggestion that applying Murray retroactively, in accordance with the general rule, would impair their contracts or vested rights. Thus, as a matter of Indiana law, DBL's nuisance action against the City was an inverse condemnation action and, as such, JPMCC was entitled to the proceeds of that action under the plain language of the Mortgage.

But this discussion simply demonstrates that DBL breached its contract with JPMCC when it disbursed the first two installments of the nuisance award to entities other than JPMCC. More is required for JPMCC to demonstrate a triable issue on its Tort Claims. While DBL's interpretation of the contract was incorrect as a matter of law, that interpretation at least had an arguable basis before Murray. And it is undisputed that the erroneous distributions each occurred before our supreme court's decision in Murray. Accordingly, JPMCC cannot demonstrate that DBL had the requisite mens rea to support any of the Tort Claims.

The essence of JPMCC's dispute on the Tort Claims is that DBL breached its contract. "Indiana does not recognize a claim for tortious breach of contract." Comfax Corp. v. N. Am. Van Lines, Inc., 587 N.E.2d 118, 124 (Ind. Ct. App. 1992). "It is axiomatic that tort obligations arise, not from an agreement between the parties, but by operation of law." Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 518 (Ind. 1993). Indeed, there is no dispute that the Mortgage was the source of DBL's duties to inform JPMCC of

its awards and to turn those awards over to JPMCC. As such, "tort law should not interfere" in the resolution of DBL's breach of its contractual duties. See Greg Allen Constr. Co., 798 N.E.2d at 175. JPMCC's remedy against DBL is for breach of contract, not for an independent tort.

Nonetheless, JPMCC also contends that the Tort Claims are justified because, "[n]otwithstanding the Loan Documents, DBL owed an independent duty to disclose the existence of the [nuisance award] as a result of the Receivership Order." Appellant's Br. at 33. This argument does not justify the Tort Claims. The trial court ordered a receiver for the Property because of JPMCC's contractual rights. Absent the parties' contractual relationship, DBL had no other duties to JPMCC.

Finally, the penalties that distinguish the Tort Claims from the Breach of Contract Claims were not assignable. As our supreme court has held:

> [A] contract-based chose in action is considered assignable unless it is purely personal in nature, and one based in tort is assignable if it arises out of injuries to personal property.
>
> But it remains well-settled in Indiana law that a cause of action in tort to recover for personal injuries is not assignable.

Midtown Chiropractic v. Ill. Farmers Ins. Co., 847 N.E.2d 942, 945 (Ind. 2006) (citation omitted). Likewise, "[t]he general rule is that the right to collect a penalty is a personal right that is not assignable." Hart Conversions, Inc. v. Pyramid Seating Co., 658 N.E.2d 129, 131 (Ind. Ct. App. 1995). And Indiana Code Section 34-24-3-1, which describes relief available on a tort claim (including treble damages, costs, and fees), "is a punitive statute intended to deter the wrongdoer and others from engaging in similar future conduct. The right is personal in nature and cannot be assigned." Id. (citation omitted).

Thus, even if JPMCC could maintain any of its Tort Claims, a judgment in JPMCC's favor on those claims would be limited to its actual loss, not a multiple, which is the same as the judgment it received against DBL[11] on its Breach of Contract Claims.

In sum, JPMCC's designated evidence fails to establish a genuine question of material fact on whether the Tort Claims were independent of the Breach of Contract Claims. They were not. But, even if they were, JPMCC would have no greater remedy against DBL than that which it has already received. Accordingly, the trial court did not err when it granted summary judgment to DBL and against JMPCC on the Tort Claims.

**Issue Three: Breach of Guaranty**

Finally, JPMCC appeals the trial court's grant of summary judgment in favor of the Guarantors. A guarantor is "a person who is liable for the payment of a debt or performance of a duty to another person." Irish v. Woods, 864 N.E.2d 1117, 1121 (Ind. Ct. App. 2007) (quotation omitted). As such, a guarantor's liability "is only relevant in the event of a default by the accommodated party." Id. As discussed above, the trial court granted summary judgment in favor of JPMCC on its Breach of Contract Claims against DBL, the accommodated party. Nonetheless, the trial court also granted summary judgment in favor of the Guarantors on JPMCC's Breach of Guaranty Claims.

To resolve this issue, we consider the following language of the guaranty:

Section 1.1 <u>GUARANTY OF OBLIGATIONS</u>. Guarantor hereby absolutely, irrevocably and unconditionally guarantees to Lender (and its successors and assigns), jointly and severally, the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable . . . . Guarantor hereby absolutely, irrevocably and

---

[11] We acknowledge that the judgment against the Guarantors could be affected by an entry in JPMCC's favor on the Tort Claims. We emphasize that our holding on this issue is that the Tort Claims are not viable against any party.

18

unconditionally covenants and agrees that it is liable, jointly and severally, for the Guaranteed Obligations as a primary obligor, and that each Guarantor shall perform, jointly and severally, each and every term and provision hereof.

Section 1.2 DEFINITION OF GUARANTEED OBLIGATIONS. As used herein, the term "Guaranteed Obligations" shall . . . be deemed to include, and Guarantor shall also be liable for, and shall indemnify, defend and hold Lender harmless from and against, any and all Losses . . . incurred or suffered by Lender and arising out of or in connection with the matters listed below:

* * *

(b) The misapplication or misappropriation of insurance proceeds or condemnation awards[.]

* * *

In addition, in the event (i) of fraud, willful misconduct or material misrepresentation by Borrower . . . , [or] (ii) of a breach or default under Sections 4.3 or 8.2 of the [Mortgage] . . . the Guaranteed Obligations shall also include the unpaid balance of the Debt (as defined in the [Mortgage]) ["the full recourse provision"].

Appellant's App. at 460-61.

The undisputed facts show that DBL breached its contract with JPMCC when DBL did not immediately surrender to JPMCC either the condemnation award or the nuisance award. However, as discussed in Issue Two, supra, DBL's surrender of the condemnation award and the third installment of the nuisance award to a neutral third party in the course of these legal proceedings was not a misapplication of those awards. See, e.g., Coffel, 452 N.E.2d at 1069. As such, JPMCC cannot show a genuine issue of

19

material fact as to whether the Guarantors are liable for JPMCC's losses arising out of or in connection with those amounts.[12]

DBL's use of the first two installments of the nuisance award, however, is another matter. Rather than surrendering the first two installments of that award to JPMCC or a neutral third party in the course of a bona fide contract dispute, DBL disbursed those installment payments to its members and other creditors without JPMCC's knowledge or authorization. As discussed in Issue Two, that action was a breach of its contract with JPMCC, although it did not rise to the level of a tort. Thus, DBL misapplied the first two installments of the nuisance award, which, again, is a condemnation award as a matter of law. Pursuant to the plain terms of the guaranty, the Guarantors are liable to JPMCC for its losses arising out of DBL's misapplication of those amounts. See Appellant's App. at 460-61.

Finally, JPMCC contends that DBL's misapplication of part of the nuisance award triggered the full recourse obligation of the Guarantors. We need not discuss the parties' several arguments on this issue in detail.[13] Rather, we simply note that the balance of the

---

[12] For the reasons discussed in Issue Two, we do not consider JPMCC's further arguments that DBL acted unlawfully or otherwise misappropriated the condemnation award when it first deposited the condemnation award in its own account before it turned the award over to the court.

[13] While we need not address all of the parties' arguments, we do briefly note the Guarantors' reliance on Fath v. CSFB 1999-C1 Rockhaven Place Limited Partnership, 303 S.W.3d 1 (Tex. Ct. App. 2009). According to the Guarantors, in that case the Court of Appeals of Texas held that guaranty language "in connection with the loan" means "at the time of the [accommodated parties'] purchase of the property." Guarantor's Br. at 27-28. The Guarantors wholly misread the Fath decision. At no point in that opinion is the language of the guaranty quoted rather than merely summarized by the court, which makes it impossible to say what the contract language actually was. And, in any event, the court's holding is not limited to the time the accommodated parties purchased the underlying property. Rather, in considering whether the accommodated parties defrauded the lender, the court discusses the accommodated parties' intent at the time they purchased the property as well as "[f]ollowing the purchase of the property." Fath, 303 S.W.3d at 6. Thus, this argument is without merit.

debt is not a Guaranteed Obligation unless certain conditions precedent are satisfied. Namely, under subpart (i) of the full recourse provision, JPMCC asserts that the misapplication of the nuisance award was a "material misrepresentation."[14] Id. at 461. And, under subpart (ii) (which is based on Section 4.3 of the Mortgage), JPMCC asserts that DBL's partial disbursement of the nuisance award "commingle[d] its assets with the assets of any of its partner(s), members . . . or any other person or entity or transfer[red] any assets to any such person or entity other than distributions on account of equity interest in the Borrower . . . ."[15] See id. at 325, 461.

Taking JPMCC's arguments on their face would render Section 1.2(b) of the guaranty meaningless. That is, JPMCC's arguments, in effect, are that the violation of Section 1.2(b) establishes a condition that makes the Guarantors liable for the balance of the debt, rather than just JPMCC's losses arising from or in connection with the Section 1.2(b) violation. But that is not what the full recourse provision says. Rather, that provision states that, "[i]n addition" to Section 1.2(b), the Guarantors might further be liable for the balance of the debt if other "event[s]" occur. See id. at 461.

It is our task to interpret a contract "so as not to render any words, phrases, or terms ineffective or meaningless." Bailey v. Mann, 895 N.E.2d 1215, 1217 (Ind. 2008). Accordingly, we conclude that a violation of Section 1.2(b), without more, does not satisfy the conditions precedent required to trigger the full recourse obligation and make the Guarantors liable for the balance of the debt. Rather, pursuant to the plain language

---

[14] For the reasons stated in Issue Two, JPMCC has not shown a genuine issue of material fact that DBL's actions were fraudulent or willful misconduct.

[15] We do not consider any of the other language from the Mortgage relevant to our resolution of this issue.

of the guaranty, JPMCC must show factors "[i]n addition" to a Section 1.2(b) violation. See Appellant's App. at 461. JPMCC has not done so. Thus, the Guarantors are not liable under the guaranty for the balance of the debt.

## Conclusion

In sum, we hold that the trial court erred when it denied JPMCC's motion for summary judgment on DBL's complaint for declaratory judgment. We also hold that the trial court erred in part when it denied JPMCC's motion for summary judgment against the Guarantors on its claim for breach of the guaranty with respect to the first two installments of the nuisance award. However, we affirm the trial court's grant of summary judgment for the Guarantors on the question of their liability for the balance of the debt. We also affirm the trial court's grant of summary judgment for DBL on JPMCC's Tort Claims. Thus, we affirm in part, reverse in part, and remand for further proceedings on the amount of the Guarantors' liability to JPMCC.

Affirmed in part, reversed in part, and remanded for further proceedings.

RILEY, J., and BROWN, J., concur.