


FILED

Jul 24 2025, 9:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Randall Travis,

*Appellant*

v.

V3 Express Carwash, LLC, Hobart Express Car Wash, LLC, Morgan Wyatt, LLC, the Leon S. Baine Revocable Trust Dated 10/22/12, and Leon S. Baine,

*Appellees*

---

July 24, 2025

Court of Appeals Case No.
24A-CT-3016

Appeal from the Porter Superior Court

The Honorable Michael A. Fish, Special Judge

The Honorable David P. Matsey, Judge Pro Tempore

Trial Court Cause No.
64D02-2202-CT-1035

---

**Brown, Judge.**

[1] Randall Travis appeals the entry of summary judgment in favor of V3 Express Carwash, LLC ("V3"), Hobart Express Car Wash, LLC ("HEC"), Morgan Wyatt, LLC ("MW"), the Leon S. Baine Revocable Trust Dated 10/22/12 (the "Trust"), and Leon S. Baine (collectively, "Defendants"). We affirm in part, reverse in part, and remand.

**Facts and Procedural History**

[2] On February 3, 2022, Travis filed a complaint against Defendants.[1] The complaint alleged that Travis and Leon Baine had been long-time friends, Travis was a full-time employee of Guaranteed Rate Mortgage in Valparaiso, and Baine was in the car wash business in Illinois. It alleged that, in early 2016, Baine "had a buyer pursuing purchasing his car washes in Illinois," that Baine "expressed his desire to expand his number of car washes in Indiana to package together as a portfolio to then market and sell to investors," that "Baine wanted to partner with Travis based on his decades of real estate experience and contacts in northwest Indiana," and that Baine "requested that Travis begin to

---

[1] The complaint states that V3 owned and operated a car wash in Valparaiso, HEC owned and operated a car wash in Hobart, the Trust is the manager of MW and upon information and belief is the manager of V3 and HEC, and MW and the Trust did business through their ownership interests in HEC and V3.

locate, perform due diligence, represent Baine, and the other Defendants, in negotiating property acquisitions and submitting zoning and construction applications to various local governmental units in Northwest Indiana." Appellant's Appendix Volume II at 16.

[3] The complaint alleged that "Baine expressed Travis would be compensated for his efforts through a profit-sharing partnership," that Travis met with Baine "on October 17, 2016 to finalize the profit-sharing partnership agreement," and that, "[i]n exchange for utilizing Travis' services, Travis was not going to be an employee or paid a salary, rather Baine provided two incentives." *Id*. at 16-17. It alleged "[t]he first incentive was that Travis would receive twenty percent (20%) profit shares of the sale price for each of the properties sold after development of the car washes, wherever they ended up being built," and "[t]he second incentive was that Travis would receive a twenty percent (20%) profit share on all income generated from new car washes in which Travis' services were used until they were sold to a future buyer, like how Baine packaged and sold his Illinois car washes." *Id*. at 17. It stated that the second incentive "would be modified if Travis became a manager of either the Hobart or Valparaiso locations" and "Travis would receive a salary to manage one or both locations and additionally receive fifteen percent (15%) of shared profits of one or both managed locations operated by HEC and V3, respectively." *Id*.

[4] The complaint further alleged that Travis began locating properties, "Travis began requesting that Baine put the agreement reached in October 2016 in writing," that "Baine refused to put anything in writing and conveyed to Travis

that he is not a partner but would share in the profits of the success he was able to achieve for Defendants as previously discussed," and that "[e]ventually Travis was able to secure the Hobart and Valparaiso locations for Defendants, HEC and V3, where car washes were built and operating, and then recently sold to a buyer just as the parties had planned back in 2016." *Id*. at 18. It stated that, "[u]pon HEC opening in Hobart, Travis agreed to be placed on the work schedule as an hourly Shift Leader to learn the physical operations while the Valparaiso location was being built," that "after working the Hobart location for approximately 7 days, Travis contacted Baine and raised the issue about the terms of his position," that "[a]fter receiving Travis' concerns, Baine unilaterally changed the terms of the agreement and failed to honor the terms reached with Travis in 2016 after more than three (3) years of Travis providing services to Baine to secure and open the locations in Indiana," and that "Travis ceased working in any capacity with the Defendants after Baine's decision to not honor his agreement and making demands of Travis as though he were an hourly employee." *Id*. at 19-20. The complaint states the following counts: Count I, breach of contract; Count II, fraud; Count III, promissory estoppel; and Count IV, quantum meruit.

[5] On August 5, 2024, Defendants filed a motion for summary judgment with respect to all claims in Travis's complaint.[2] Defendants argued that Travis's breach of contract claim was barred by the Statute of Frauds as an agreement

---

[2] Defendants designated Travis's complaint, their answer, and Travis's deposition, which is 220 pages.

that is not to be performed within one year. They argued "judgment should be entered on behalf of" V3, HEC, MW, and the Trust because "they were not involved in the purported agreement or promises." *Id*. at 116 (capitalization omitted). They stated that Travis's fraud claim is "premised upon the alleged breach of contract" and "there is no separate and independent tort of fraud alleged, nor a separate and distinct injury alleged." *Id*. at 118-119. They also argued that they are entitled to summary judgment on Travis's promissory estoppel and quantum meruit claims because they are based on the same contract-based allegations as raised in Count I.

[6] Travis filed a response stating that he and Baine "began investigating sites for car washes in 2016, before formally meeting to discuss Travis finding sites for car washes in February 2017," that "[t]he February 2017 meeting, however, was a follow-up to a prior meeting in October 2016," and that, at the February 22, 2017 meeting, "they discussed profit sharing and Travis owning shares in the car washes." *Id*. at 132-133. Travis stated that "he would investigate sites, identifying possible locations, perform a suitability analysis and check if the areas were zoned for a car wash." *Id*. at 132. He stated "[t]he deal never involved [him] leaving his mortgage career to become an hourly employee of the Baine organizations at some future speculative date." *Id*. at 133. He asserted the Statute of Frauds did not apply because the agreement could have been completed within one year. He maintained "[t]he entity defendants are properly named as defendants because they are the alter egos of Defendant Baine and are the entities that have purported to own, manage, and profit from

the operation of the carwash locations." *Id*. at 141. Defendants filed a reply arguing Travis even "admitted that the purported agreement could not be done in under two years." *Id*. at 155.

On October 17, 2024, the court held a hearing, and on November 15, 2024, issued an order granting Defendants' motion for summary judgment.

## Discussion

When reviewing a grant of a motion for summary judgment, our standard of review is the same as it is for the trial court: summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Wagner v. Yates*, 912 N.E.2d 805, 808 (Ind. 2009). We construe all factual inferences in favor of the non-moving party. *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 197 (Ind. 2009), *reh'g denied*.

### A. *Breach of Contract*

Travis asserts that his oral agreement with Baine "is exempt from the Statute of Frauds" and "[t]here is no evidence in the record that shows the trial court that the parties expressly understood or agreed that the services [that he] was to provide as of February 2017 could not be completed in a year." Appellant's Brief at 10-11. He also argues that he "substantially performed and only payment for his performance remained." *Id*. at 10 (capitalization omitted). Defendants argue, "The only evidence was that the parties agreed and understood that it would take a minimum of two years to perform. Indeed, [Travis] admitted the purported agreement upon which Count I for breach of

contract is based could not be performed in less than two years." Appellees' Brief at 18. They also argue the part performance doctrine is not applicable.

### 1. *Statute of Frauds*

[10] The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds between the contracting parties on all essential terms of the transaction. *Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016). In addition, to be valid and enforceable, a contract must be reasonably definite and certain. *Id.* (citing RESTATEMENT (SECOND) OF CONTRACTS § 33 (in order to give effect to a contract, its terms must be "reasonably certain")).

[11] The Indiana Statute of Frauds requires that certain contracts be in writing. The Statute, found at Ind. Code § 32-21-1-1, provides that a person may not bring an action "involving any agreement that is not to be performed within one (1) year from the making of the agreement" unless the contract "is in writing and signed by the party against whom the action is brought or by the party's authorized agent." The Statute is intended to preclude fraudulent claims that would probably arise when one person's word is pitted against another's and that would open wide the floodgates of litigation. *Jernas*, 53 N.E.3d at 446. The writing must contain the agreement's essential terms. *Id.* "Performance" under a contract is "[t]he successful completion of a contractual duty." *Rodts v. Heart City Auto., Inc.*, 933 N.E.2d 548, 553 (Ind. Ct. App. 2010) (citing BLACK'S LAW DICTIONARY 1158 (7th ed. 1999)).

[12] Even assuming the parties entered into a reasonably definite and certain agreement, it is undisputed that the agreement and the essential terms of that agreement were not in writing. While Travis did not allege the agreement was for a definite length or period, he testified regarding the steps to develop a car wash business site including a feasibility determination, entering a contract to purchase, and construction. When asked, "your understanding of the construction process, how long does that last," Travis answered "I would say a minim[um] of one year." Appellees' Appendix Volume II at 60. Defendants' counsel asked, "[f]rom what you just described there is no way that this can get done in a year," and Travis stated, "Is it possible? I suppose so. Not from my perceptive [sic]. I wouldn't imagine that, no." *Id*. Defendants' counsel stated, "I am trying to get down to a timeframe . . . [s]tart to finish on a car wash . . . project," and Travis replied, "I would . . . say a minimum of two years." *Id*. at 61. When later asked, "your understanding from the February of 2017 meeting was that this twenty percent share of equity would be paid in the future," he replied affirmatively. *Id*. at 67. When asked "[a]nd they weren't close to operating . . . in 2017," Travis replied affirmatively, when asked "[s]o that would be paid in the future," he stated "[c]orrect," and when asked "[a]nd it sounds like two years from then, at the minimum," he again answered "[c]orrect." *Id*. The designated evidence reveals that the agreement to develop the car wash sites would not be fully performed or completed in one year and was thus subject to the writing requirement of the Statute of Frauds.

    2. *Part Performance*

[13] As for his assertion that the Statute of Frauds is inapplicable because he "substantially performed" and "only payment" remained, Appellant's Brief at 10, this Court has stated that "[t]he part performance doctrine is based on the rationale that equity will not permit a party who breaches an oral contract to invoke the statute of frauds where the other party has performed his part of the agreement to such an extent that repudiation of the contract would lead to an unjust or fraudulent result." *Spring Hill Devs., Inc. v. Arthur*, 879 N.E.2d 1095, 1104 (Ind. Ct. App. 2008) (internal quotations and citation omitted). "The degree or amount of performance required must, by necessity, vary with every case and be adapted to fit the situation of that case." *Young v. Adams*, 830 N.E.2d 138, 144 (Ind. Ct. App. 2005) (citation omitted), *trans. denied*.

[14] Travis cites to cases involving oral agreements to convey land or financing tied to a contract for the sale of land. He does not point to authority for the idea that a complex oral agreement governing a joint effort to develop sites for business operations over an extended period and not to be performed within one year, where the specific contractual duties of the respective parties are not in writing, is enforceable based on the doctrine of part performance. *See Wolke v. Fleming*, 103 Ind. 105, 2 N.E. 325, 327 (1885) ("[T]he doctrine of part performance has no application to contracts that cannot be performed by either party within a year."); RESTATEMENT (SECOND) OF CONTRACTS § 130 cmt. e ("Part performance not amounting to full performance on one side does not in general take a contract out of the one-year provision. Restitution is available in such cases . . . .").

Further, Travis testified regarding the steps involved in locating and developing sites for car wash facilities, feasibility determinations, zoning, soil testing, site acquisition, construction processes, and financing. The parties did not reduce their agreement, or the essential terms of their agreement and Travis's specific contractual obligations, to writing. Travis does not point to particular portions of his 220-page deposition which outline his specific duties pursuant to the alleged agreement. *See Keller v. State*, 549 N.E.2d 372, 373 (Ind. 1990) ("[A] court which must search the record and make up its own arguments because a party has presented them in perfunctory form runs the risk of being an advocate rather than an adjudicator."). While Travis testified regarding his work to develop the car wash sites as discussed below, we are unable to determine his specific obligations under the alleged agreement and which duties the parties considered essential. *See Zukerman v. Montgomery*, 945 N.E.2d 813, 819 (Ind. Ct. App. 2011) (contracts must be reasonably definite in their material terms so intention of parties may be ascertained) (citing *Wenning v. Calhoun*, 827 N.E.2d 627, 629 (Ind. Ct. App. 2005), *trans. denied*). Travis testified that he quit working at the Hobart facility about five months before the Valparaiso construction was completed. We do not find that the doctrine of part performance precludes the application of the Statute of Frauds in this case. The trial court did not err in entering summary judgment in favor of Defendants on Travis's breach of contract claim.

B. *Fraud*

Travis argues that Defendants "committed fraud upon [him] when they entered the oral contract" and the "oral contract's terms were definite and related to existing facts as to the compensation intentions[.]" Appellant's Brief at 15 (capitalization omitted). Defendants argue that Travis's "sole allegation of fraud arose from not being paid according to the terms of the purported February 22, 2017 oral contract" and "[t]hus, there was no separate and independent tort of fraud alleged, nor a separate and distinct injury alleged, apart from that arising from the purported breach of contract." Appellees' Brief at 29. They also argue there were no allegations of false representations of past or existing facts.

"To prove fraud, a plaintiff must show: '(i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury.'" *Reed v. Reid*, 980 N.E.2d 277, 292 (Ind. 2012) (quoting *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996)). "A mere breach or violation by one of the parties of an oral agreement which is within the statute of frauds, or his denial of the agreement or refusal to perform it, is not of itself a fraud[.]" *Whiteco Indus., Inc. v. Kopani*, 514 N.E.2d 840, 844 (Ind. Ct. App. 1987) (citing *Kavanaugh v. England*, 232 Ind. 54, 59, 110 N.E.2d 329, 331 (1953)), *trans. denied*. To show both a breach of contract and fraud, "a plaintiff . . . must prove that the breaching party committed the separate and independent tort of fraud and that such fraud resulted in injury distinct from that resulting from the

breach of contract." *Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364 (Ind. Ct. App. 2012) (citation omitted), *reh'g denied*, *trans. denied*.

[18]     Count II of Travis's complaint alleged that Baine "made representations to [him] of material terms in the contract for services that Baine knew were false, or knew that Baine was never going to honor" and that, "[s]pecifically, Baine stated Travis would receive a twenty percent (20%) share of profits from all successful car wash projects and twenty percent (20%) of the sale price realized when the car washes were sold." Appellant's Appendix Volume II at 22. At Travis's deposition, Defendants' counsel stated, "you have sued the defendants in this case for fraud. What are you claiming was the fraud that they committed?" Appellees' Appendix Volume II at 67. Travis replied, "That I haven't seen a dime from the profits of the sale of the profits of the operations of the two car washes that I was brought on to obtain." *Id.* When asked "that's your sole allegation about the fraud," he answered "Yes." *Id.* Travis fails to allege a separate and independent tort of fraud resulting in injury distinct from that resulting from the breach of contract claim. The trial court properly entered summary judgment in favor of Defendants on Travis's fraud claim.

C.  *Promissory Estoppel*

[19]    Travis asserts that "[t]he oral contract is enforceable under the estoppel doctrine and [his] estoppel claim in his complaint." Appellant's Brief at 12. In *Hrezo v. City of Lawrenceburg*, this Court discussed the doctrine of promissory estoppel:

> "Oral promises that are not enforceable under the Statute of Frauds may nonetheless be enforced under the equitable doctrine of promissory estoppel." [*Coca-Cola Co. v.*] *Babyback's* [*Intern., Inc.*], 841 N.E.2d [557,] 568 [(Ind. 2006)] (citing *Brown* [*v. Branch*], 758 N.E.2d [48,] 51 [(Ind. 2001)]). As articulated in *Babyback's,* prior cases have examined "the 'problem' when 'it is the very promise which the statute declares unenforceable that the [plaintiffs] assert should remove their claim from the statute's operation.'" *Id.* (quoting *Whiteco*, 514 N.E.2d at 844). The Court explained:
>
>> In *Ohio Valley Plastics v. Nat'l City Bank*, 687 N.E.2d 260, 264 (Ind. Ct. App. 1997), the court emphasized as "well-settled authority, that a claim of estoppel or fraud will not operate to remove a case from the Statute of Frauds where the promise relied upon is the very promise that the Statute declares unenforceable if not in writing." As explained in *Whiteco*:
>>
>>> Were this not the rule the statute would be rendered virtually meaningless because the frustrated claimant would always assert an oral promise/agreement to defeat by means of estoppel the statute's requirement for a written one. The contest would then concern the credibility of the evidence of an oral promise or agreement. That, of course, is precisely what the statute seeks to avoid.
>
> *Id.* at 568-569 (quoting *Whiteco,* 514 N.E.2d at 844). The Court explained that this rule is more restrictive than Section 139 of the Restatement of Contracts, which "advocates greater limits upon the Statute of Frauds." *Id.* at 569.

> A party seeking to defeat a defendant's Statute of Frauds defense based upon promissory estoppel must establish the following elements: "1) a promise by the promissor; 2) made with the expectation that the promisee will rely thereon; 3) which induces reasonable reliance by the promisee; 4) of a definite and substantial nature; and 5) injustice can be avoided only by enforcement of the promise." *Spring Hill Developers, Inc. v. Arthur*, 879 N.E.2d 1095, 1100 (Ind. Ct. App. 2008) (citing *First Nat. Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949, 954 (Ind. 1991)). . . .

934 N.E.2d 1221, 1230-1231 (Ind. Ct. App. 2010), *trans. denied*.

[20]    With respect to the fifth element, that "injustice can be avoided only by enforcement of the promise," we held:

> This court recently observed that "[t]his element creates a high bar for the party seeking to establish promissory estoppel." [*Spring Hill Developers*, 879 N.E.2d] at 1101. Indiana courts "have recognized the possibility of relief for 'injustice' in limited circumstances:"
>
> > [I]n order to establish an estoppel to remove the case from the operation of the Statute of Frauds, the party must show [] that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss.
> >
> > In other words, neither the benefit of the bargain itself, nor mere inconvenience, incidental expenses, etc. short of a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss are sufficient to remove the claim from the operation of the Statute of Frauds.
>
> *Babyback's*, 841 N.E.2d at 569 (quoting *Brown*, 758 N.E.2d at 52 (quoting *Whiteco*, 514 N.E.2d at 845)). A successful party is entitled to reliance damages only; compensation may not be sought for

> expectancy injuries or restitution/quantum meruit based upon the
> use of promissory estoppel to defeat the Statute of Frauds. *Spring
> Hill*, 879 N.E.2d at 1103-1104. To establish that injustice can be
> avoided only through the enforcement of a defendant's promise, the
> plaintiff must show that its reliance injury is "1) independent from
> the benefit of the bargain and the resulting expenses and
> inconvenience; and 2) so substantial as to constitute an unjust and
> unconscionable injury." *Id*. at 1103.

*Hrezo*, 934 N.E.2d at 1231-1232 (footnote omitted). The appellant in *Hrezo* claimed reliance damages based upon its actions of "submit[ting] design plans, form[ing] a new legal entity, devot[ing] time, effort and [choosing] to forego other opportunities, appl[ying] for a liquor license and engag[ing] the services of various professionals." *Id*. at 1232. This Court held that "[t]he consequences cited by Hrezo as reliance damages" were not "so substantial as to constitute an unjust and unconscionable injury." *Id*.

[21] Here, Count III of Travis's complaint alleged "Baine made promises to Travis that he would receive twenty percent (20%) of profits on the car washes Travis assisted Baine in opening, and twenty percent (20%) commission on the sale of car washes that Defendants sold that Travis helped Baine open in Indiana" and "[i]njustice can only be avoided by enforcing the promises made by Baine[.]" Appellant's Appendix Volume II at 23. Travis testified that he worked for Guaranteed Rate as a mortgage loan officer. Travis worked as an onsite employee at the car wash facility in Hobart, he was paid an hourly rate, and he quit the employment in October 2019 after seven to ten days because it did not allow him time for his employment as a mortgage loan officer. Defendants'

counsel asked, "You didn't change anything related to your employment at Guaranteed Rate as a result of this arrangement with Leon Baine?" Appellees' Appendix Volume II at 76. Travis replied, "No." *Id*. Travis testified that he did not contribute any money to the acquisition or construction of either site and that he claimed no membership or ownership interest in V3 or HEC. Travis does not allege reliance damages so substantial and independent as to constitute an unjust and unconscionable loss sufficient such as to remove his claim from the operation of the Statute of Frauds. This is especially the case in light of our conclusion below that Travis may seek relief based on his quantum meruit claim. The trial court did not err in entering summary judgment on Travis's promissory estoppel claim.

D. *Quantum Meruit*

[22] Travis further argues that he pled a claim for quantum meruit and that he is entitled "to damages for services rendered that remain unpaid." Appellant's Brief at 15. Defendants argue summary judgment was properly entered on Travis's quantum meruit claim "because it was based upon the same operative facts to assert a breach of contract." Appellees' Brief at 38.

[23] This Court has discussed a claim of quantum meruit:

> Even if there is no express contract, a plaintiff may sometimes recover under the theory of unjust enrichment, which is also called *quantum meruit*, contract implied-in-law, constructive contract, or quasi-contract. *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991), *reh'g denied, cert. denied*, 502 U.S. 1094, 112 S. Ct. 1170 (1992). These theories are "legal fictions invented by the common

law courts in order to permit recovery where in fact there is no true contract, but where, to avoid unjust enrichment, the courts permit recovery of the value of the services rendered just as if there had been a true contract." *Wallem* [*v. CLS Industries, Inc.*], 725 N.E.2d [880,] 890 [(Ind. Ct. App. 2000)].

"Principles of equity prohibit unjust enrichment in cases where a party accepts the unrequested benefits another provides despite having the opportunity to decline those benefits." *Truck City of Gary, Inc. v. Schneider Nat. Leasing*, 814 N.E.2d 273, 280 (Ind. Ct. App. 2004). The purpose of these equitable theories is to force those who have been unjustly enriched at the expense of another party to make restitution to that other party. *Bayh*, 573 N.E.2d at 408 (quoting RESTATEMENT OF RESTITUTION § 1 (1937)).

"A party seeking to recover on a theory of *quantum meruit* must demonstrate that a benefit was rendered to another at the express or implied request of such other party." *SLR Plumbing* [*v. Turk*], 757 N.E.2d [193,] 200 [(Ind. Ct. App. 2001)]. The plaintiff must also demonstrate that to allow the defendant to retain the benefit without paying for it would be unjust and that the plaintiff expected payment. *Bayh*, 573 N.E.2d at 408.

*Kelly v. Levandoski*, 825 N.E.2d 850, 860-861 (Ind. Ct. App. 2005) (footnote omitted), *trans. denied*. "In general, the measure of *quantum meruit* recovery is the fair market value of services rendered, or the reasonable value thereof." *Warfield v. Dorey*, 55 N.E.3d 887, 894 (Ind. Ct. App. 2016) (citations and quotations omitted). *See* BLACK'S LAW DICTIONARY 1437 (10th ed. 2014)

("Quantum meruit" means "as much as he has deserved" and "[a] claim or right of action for the reasonable value of services rendered").[3]

[24] Travis testified that his "first task" was to "[f]ind a location," he "spent time investigating lots, driving to different communities," and he spoke with a broker about finding lots. Appellees' Appendix Volume II at 46. He testified that, after an offer to purchase the Hobart site was accepted, "we . . . started working with the City of Hobart to obtain building permits," "I was always involved [] as far as all the correspondence," "I would from time to time drop paperwork off to the City of Hobart," "I brought some checks to them for whatever their permit fees were," "I attended the meetings for approval" and "[a]ttended one that [Baine] couldn't attend representing us -- or his group, [MW],"[4] and "[o]ur

---

[3] Defendants also argue that "[q]uantum meruit is only recoverable when no express contract exists, or does not cover the disputed issue," Appellant's Brief at 39 (citing *Fiederlein v. Boutselis*, 952 N.E.2d 847, 857 (Ind. Ct. App. 2011)), and that "here, there is an alleged express contract that governs the relationship." *Id*. Even assuming the parties entered into an express oral agreement, we found above that any such agreement is unenforceable because it was subject to the writing requirement of the Statute of Frauds. Under these circumstances, Travis is not precluded from seeking to recover the value of the services he rendered in an action in quantum meruit. The Indiana Supreme Court has held that "it is quite well settled that one who has rendered services . . . under a contract voidable under the [S]tatute [of Frauds] may recover the value of the services . . . under the *quantum meruit* or the *quantum valebat*." *Wolke*, 2 N.E. at 328 (citations omitted). *See also Martin v. Martin*, 122 Ind. App. 241, 244, 103 N.E.2d 905, 906 (1952) ("It is a well settled principle of law that one who has rendered services or transferred property under a contract voidable under the statute of frauds may recover the property or the value of such services or property under the quantum meruit or quantum valebant. This principle was adopted in this state as early as 1841, and it has not since been disturbed.") (citations omitted); 30 IND. LAW ENCYC. *Work and Labor* § 8 ("Recovery may be had in quantum meruit, however, where services were performed under an express contract that is invalid or unenforceable, such as where no valid contract exists due to the operation of the statute of frauds.") (footnotes omitted); 73 AM. JUR. 2D STATUTE OF FRAUDS § 417 ("Generally, one who has performed in part the services contracted for under a parol contract not to be performed within a year, upon the employer's repudiation of the contract, may recover the value of the services rendered in an action in quantum meruit.") (footnote omitted).

[4] Travis indicated MW was Baine's company that "he utilizes for construction." Appellees' Appendix Volume II at 46.

permits got stalled a little bit so I used a connection that I knew with their city attorney[.]" *Id.* at 48. He indicated that he dropped off paperwork at Hobart five or six times. He testified that he spoke at a public meeting because "[o]ur excavator tore down some trees that weren't supposed to be torn down" "[s]o we had to revise the plan and represent to the board." *Id.* He testified "I basically just kind of kept eyes on the site," "I would visit there . . . multiple times a week just to check progress," and "I would give [Baine] a progress report." *Id.* at 49. He stated that, before construction started, "we were over there cleaning the place up so that it could get ready for demolition" and "there was a lot of stuff that was just left behind." *Id.*

[25] With respect to the Valparaiso site, Travis testified "I live there and I saw the sign go up . . . [s]o I immediately called [Baine]," "the first thing that [Baine] always wanted was a car count," and "I went over multiple times, different times of days, different times on the weekends and sat and counted cars." *Id.* at 62. He testified that, after the Valparaiso contract was signed, Baine "reached out to me and . . . wanted me to get a little more involved with the subcontractor," "he sent me a list of the contractors and what their roles were," "he asked me to contact some subcontractors," "I contacted C. Lee for demolition and possible excavating, they bid," "John's Tree Service, who ultimately did do all the trees," "Tyson Lovelace, he did the asbestos removal," and "Trout Glass . . . they ended up doing the glass . . . for this project and for Hobart." *Id.* He indicated that he attended one meeting at Valparaiso and traveled to the City of Valparaiso building department ten times.

The deposition testimony reveals genuine issues of material fact regarding the services and benefits provided by Travis and accepted by Baine and his companies without compensation, and whether allowing Baine and his companies to avoid payment for Travis's services would be unjust. Accordingly, we reverse the trial court's entry of summary judgment on Count IV of Travis's complaint alleging a claim of quantum meruit and remand for further proceedings on that claim.[5] We affirm the trial court's entry of summary judgment in favor of Defendants on Counts I, II, and III of Travis's complaint.

For the foregoing reasons, we affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

Bailey, J., and Weissmann, J., concur.

ATTORNEY FOR APPELLANT

Adam M. Sworden
Sworden Law, P.C.
Valparaiso, Indiana

ATTORNEY FOR APPELLEES

Greg A. Bouwer
Koransky, Bouwer, & Poracky, P.C.
Dyer, Indiana

---

[5] The parties present argument about whether V3, HEC, MW, and the Trust are "alter egos" of Baine. We decline to find as a matter of law based on the designated evidence the extent to which Travis may recover damages on his quantum meruit claim from V3, HEC, MW, and the Trust as well as from Baine.