Harry FATH, Appellant,

v.

**CSFB 1999–C1 ROCKHAVEN PLACE LIMITED PARTNERSHIP,** Appellee.

No. 05–08–00175–CV.

Court of Appeals of Texas, Dallas.

July 30, 2009.

Rehearing Overruled Feb. 17, 2010.

Julie Ann Walker, David A. Miller, Miller Mentzer, P.C., Palmer, for appellant.

Randall R. Kucera, Blake Medford Hedgecock, Heather Lynn Peckham, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Dallas, Murry B. Cohen, Akin Gump Strauss Hauer & Feld LLP, Houston, for appellee.

Before Justices BRIDGES, O'NEILL, and LANG.

## OPINION

Opinion By Justice BRIDGES.

Harry Fath appeals from a verdict following a jury trial. In four issues, Fath contends: (1) the evidence is insufficient to support the jury finding of breach of guaranty; (2) the trial court erred in submitting a broad-form liability question; (3) the evidence is insufficient to support the jury's award of damages; and (4) the trial court erred in awarding attorney's fees. We sustain Fath's first issue in part and second issue, reverse the trial court's judgment, and remand this case for a new trial.[1]

## Background

Fath runs Fath Management Company d/b/a Fath Properties. Fath Properties manages residential apartment complexes. In 2000, companies in which Fath owned a controlling interest, purchased apartment complexes known as Forest Cove I and Forest Cove II. The following year, Fath Forest Lane Limited Partnership (Fath Forest) purchased Forest Cove III for approximately $5.6 million through a Note and Deed of Trust Assumption Agreement (assumption agreement). As set forth in the assumption agreement, the lender consented to Fath Forest's renovation of Forest Cove III and acknowledged that Fath Forest "will be terminating existing apartment leases and entering into new apart-

1. In light of this court's disposition of Fath's first and second issues, we do not address his third and fourth issues.

ment leases as the Renovation progresses."

In connection with the assumption of the loan, Fath executed a guaranty. Pursuant to the guaranty and as pertinent to this case, Fath was obligated to the lender for any loss caused by the fraud or intentional misrepresentation by Fath Forest or Fath (collectively "Fath defendants") in connection with the loan and the gross negligence or willful misconduct by Fath Forest that results in the physical waste of the property.

The parties presented conflicting evidence at trial as to the condition of Forest Cove III when Fath Forest purchased it. Fath presented evidence that the condition of the interior included mold, water leaks, termite, rodent, and roach infestations, dead animals, an open fire pit, evidence of tenants raising chickens inside a unit, and outdated and broken appliances. Rockhaven, on the other hand, presented evidence that under the previous owner, the apartments were over ninety percent occupied with most tenants paying their rent on time. The previous owner had spent $350,000.00 refurbishing the property.

Fath Forest completed extensive renovations to the exterior including construction of a gatehouse, painting, installation of a new roof with the addition of gables, and installation of architectural molding. Renovation to the interior began with removal of trash and furniture abandoned by tenants, removal of moldy sheetrock, dilapidated cabinets, flooring, and broken electrical and plumbing fixtures. Fath Forest spent in excess of $1.6 million on the renovations.

With a downturn in the market and the occupancy rate at Forest Cove I and II declining, Fath Forest made the decision to slow down the renovations at Forest Cove III but continued to make its monthly mortgage payments in excess of $50,000.00. In October 2004, Fath Forest notified Wells Fargo[2] that it would stop making its monthly payments. Wells Fargo declared the loan in immediate default and transferred servicing to Lennar Partners (LNR)[3] LNR formed CSFB 1999–C1 Rockhaven Place Limited Partnership (Rockhaven) who purchased Forest Cove III at a foreclosure sale on February 1, 2005 for $1,650,000.00. Rockhaven is the assignee and owner of the loan and all claims that the previous lender had against the Fath defendants. On September 1, 2005, Rockhaven resold the property for $1,800,000.00.

Rockhaven sued the Fath defendants for breach of contract, breach of guaranty, fraud and misrepresentation, and common law waste. Rockhaven nonsuited Fath Forest. The only issue submitted to the jury was breach of guaranty. The jury found in favor of Rockhaven and awarded damages in the amount of $3,648,669.00 and attorney's fees. This appeal timely followed.

### Sufficiency of the Evidence

In his first issue, Fath contends the evidence is legally and factually insufficient to support the jury's finding of breach of guaranty. Specifically, Fath contends the evidence does not support a finding of breach of guaranty based on fraud/intentional misrepresentation, gross negligence/ willful misconduct, or physical waste of the property.

**2.** The lender used Wells Fargo as the master servicer of the loan. Wells Fargo handled the day-to-day loan decisions.

**3.** LNR was the special servicer of the loan who handled it after being notified of the payment default.

In evaluating the legal sufficiency of the evidence to support a finding, we must determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). We sustain a no-evidence point only if there is no more than a scintilla of evidence proving the elements of the claim. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 520 (Tex. 2002). In making this determination, we must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 807. Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

### 1. Fraud/Intentional Misrepresentation

 The elements of a cause of action for fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).[4] A promise to do an act in the future constitutes fraud only when made with no intention of performing the promise at the time the promise was made. *Formosa Plastics Corp. USA v. Presidio*

*Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). The mere failure to perform a contract is not evidence of fraud. *Id.* Fraudulent intent may be established by either direct or circumstantial evidence, and the subsequent failure to perform the promise, while not alone dispositive, can be considered with other factors to establish intent. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434–35 (Tex.1986).

 Rockhaven asserted in its first amended petition that the Fath defendants committed fraud by "committing to pay for and complete the Renovations and subsequently failing to do so." In its appellate brief, Rockhaven directs us to numerous record citations it claims establish fraud.

The evidence shows that Fath was very worried about the whole apartment industry six months after the purchase of Forest Cove III because all of his properties were collapsing in occupancy. He testified that everyone in the apartment industry was very concerned about the subprime loans and all the houses being built.

Ted Broadfoot, former vice president of operations for Fath, testified that in December of 2003, he prepared the 2004 budget. The budget he prepared did not include money for finishing the interior of Forest Cove III in 2004. He made that decision based on the market conditions. Broadfoot left Fath's employment in January of 2004.

Rockhaven also relies upon Wells Fargo's inspections reports of the property. The information in the reports was provided by managers at the property. The October 2002 report acknowledged that the property was vacant "due to a total

---

**4.** A claim of intentional misrepresentation has the same elements as a fraud claim. *See Smith v. Tilton*, 3 S.W.3d 77, 82 n. 3 (Tex. App.-Dallas 1999, no pet.). Accordingly, our discussion of fraud includes intentional misrepresentation.

refurbishing of the complex." It projected that the first rentals would take place in March 2003. The October 2003 report stated that the renovations will be completed in 2004. Finally, the July 2004 inspection report states that the renovations will be completed when Forest Cove I and Forest Cove II are at eighty percent occupancy.

After reviewing the record, we do not find any evidence that the Fath defendants did not intend to complete the renovations at the time they purchased the property. Although Fath was very worried about the apartment industry, he testified that the intent all along was to do Forest Cove I first, Forest Cove II second, and Forest Cove III third. Following the purchase of the property, Fath initiated renovations. He spent over $1.6 million on the renovations. For over three years while the renovations were progressing, Fath timely paid his mortgage payments. Wells Fargo did not send the loan into default because the mortgage payments were being timely paid.

 LNR employee, Bjorn Borgenhard, admitted that he had no information that indicated that the Fath defendants did not intend to pay the note or complete the renovations. The only information that indicated to him that they did not intend to pay the note or complete the renovations is the fact that they did not do it. Failure to perform, however, is not evidence of fraud. *See Formosa Plastics Corp.*, 960 S.W.2d at 48. The inspection reports show that Fath kept the lender informed of the progress and the plans for completion.

The inspection reports do not contain any indication that the Fath defendants did not intend to complete the renovations. They reflect postponed projections for the completion of the renovations. Moreover,

the reports did not prompt Wells Fargo to declare a default because Fath continued to make the monthly mortgage payments on time.

The loan documents did not contain a deadline for the renovations. Until October 2004, the Fath defendants consistently maintained their intent to complete the renovations and had already spent in excess of $4 million on mortgage payments and renovations. Having reviewed the evidence, we conclude there is legally insufficient evidence to show that at the time of the purchase of the property, Fath did not intend to complete the renovations.

### 2. Gross Negligence/Willful Misconduct

 Two elements comprise gross negligence. First, viewed objectively from the actor's standpoint, the act or omission complained of must depart from the ordinary standard of care to such an extent that it creates an extreme degree of risk of harming others. *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 784–86 (Tex. 2001). Second, the actor must have actual, subjective awareness of the risk involved and choose to proceed in conscious indifference to the rights, safety, or welfare of others. *Id.* at 785. "Extreme risk" is not "a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Id.* "Willful misconduct" is generally equated with gross negligence. *IP Petroleum Co., Inc. v. Wevanco Energy, LLC*, 116 S.W.3d 888, 898 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).[5]

 Fath contends there is no evidence of gross negligence by Fath Forest that resulted in physical waste of Forest Cove III. Fath contends there is no evidence that the manner in which Fath For-

---

5. Accordingly, our discussion of gross negli- gence includes willful misconduct.

est undertook the renovations created an extreme risk. He cites to testimony of William Baldridge, prior owner of Forest Cove III. Baldridge declined to state that the manner in which Fath Forest undertook the renovations was risky.

Several other witnesses, however, testified that Fath Forest's approach to the renovations deviated from the industry standard because vacating the property eliminated the flow of income. Mark Hartsell, owner of Diamond H Construction, L.L.C., was hired by LNR to prepare an estimate to repair the damage to Forest Cove III. He had been in the multi-family housing construction business for approximately twenty-five years. He testified that vacating the entire property prior to renovation was a *gross departure* from the industry standard. In preparing his estimate, he spent two days examining Forest Cove III. He stated that the prior demolition efforts had been very shoddy. He observed that sheetrock had been kicked in.

Diane Butler, a real estate appraiser specializing in multi-family housing, testified that it is customary to try and maintain as much cash flow as possible during a renovation. Fath deviated from this standard by vacating the entire complex. Borgenhard testified that he had never seen anyone vacate an entire property before renovating. He also testified that, in twenty-five years, he had never seen a property left in such bad condition.

Fath contended that he needed to vacate the entire complex because crime was so bad. Testimony at trial, however, showed that crime was bad in that area generally, not just at Forest Cove III. Vacating two hundred units in an area with several thousand apartments will not solve the crime problem.

We now turn to Fath's subjective awareness of the risk involved in proceeding

with the renovations by first vacating the entire complex. Fath testified that he did the lender a favor in returning the property in the condition it was in because it was basically worthless when he bought it. Other evidence, however, showed that Forest Cove III was in good condition, profitable, and over ninety percent occupied when Fath purchased it.

We conclude Rockhaven presented legally sufficient evidence to support its gross negligence ground for breach of the guaranty.

### 3. Physical Waste

██ To establish a claim of waste, a party must show an injury to the reversionary interest in land caused by the wrongful act of a tenant or other party rightfully in possession. *R.C. Bowen Estate v. Continental Trailways*, 152 Tex. 260, 256 S.W.2d 71, 72 (1953); *King's Court Racquetball v. Dawkins*, 62 S.W.3d 229, 233–33 (Tex.App.-Amarillo 2001, no pet.). In *King's Court*, a lessee had the right to "alter, reconstruct, rebuild and modify" the leased premises. *King's Court*, 62 S.W.3d at 232. The lessee demolished the interior of the building and it remained in the gutted condition at the end of the lease. The trial court awarded damages for waste. *Id.* On appeal, the lessee argued that its actions were not wrongful because the lease allowed him to alter the building without restriction. The court held that the lease terms did not permit the lessee to destroy the building. *Id.* at 234. The court held the lessee committed a wrongful act by demolishing the interior of the building in violation of the lease. *Id.* at 234–35.

Like the lease in *King's Court*, the loan documents in this case did not afford Fath the option to demolish the interior of the complex and then walk away. Fath had permission to renovate the complex, not

permission to demolish it in preparation of renovations and then walk away.

■ There is conflicting evidence as to the condition of the property at the time Fath Forest purchased it. Fath testified that it was in deplorable condition and that he, in fact, left it in a better condition. Others testified that the complex was in good condition with a ninety percent occupancy rate. At the time of Fath's default, many of the units were in a gutted condition, nothing more than a shell. There was also evidence that it would cost more than $3 million to repair the damage caused by Fath's minimal renovation efforts. We conclude the evidence is legally sufficient to support Rockhaven's breach of guaranty claim based on waste.

We conclude the evidence is legally insufficient to support a finding of fraud. We conclude the evidence is legally sufficient to support findings of gross negligence and waste. Accordingly, we sustain Fath's first issue with respect to fraud. In all other respects, we overrule Fath's first issue.

### Jury Charge

■ In his second issue, Fath contends the trial court erred in its submission of the liability question to the jury. Specifically, Fath contends it was error to submit a broad-form question because it contained both valid and invalid theories of liability.

■ We review the trial judge's submission of instructions and jury questions under an abuse of discretion standard. *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 824 (Tex.App.-Dallas 2003, pet. denied). To determine whether an alleged error in the jury charge is reversible, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Barnett*, 123 S.W.3d at 824. When the complaint on appeal is that the trial judge improperly submitted an instruction, definition, or question, reversal is warranted when, in spite of a timely objection, the trial judge submits an invalid theory of liability or an unsupported element of damage, and the error prevents appellant from demonstrating the consequences of the error on appeal. *See Barnett*, 123 S.W.3d at 825.

As submitted to the jury, question one read:

QUESTION NO. 1

Did Fath fail to comply with the Guaranty?

"Gross negligence" means an act or omission by Fath Partnership, (a) which when viewed objectively from the standpoint of Fath Partnership at the time of the occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (b) of which Fath Partnership has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

"Waste" is an injury to the reversionary interest in land caused by the wrongful act of a party rightfully in possession. Waste occurs when, without the Lender's consent, the Borrower: (a) physically changes the real estate, whether negligently or intentionally, in a manner that reduces its value; (b) fails to maintain and repair the real estate in a reasonable manner, except for repairs of casualty damage or acts of third parties not the fault of the Borrower; or (c) materially fails to comply with covenants in the Loan Documents respecting the physical care, maintenance, construction, or demolition of the real estate or improvements on it.

Fraud occurs when—

a. a party makes a material misrepresentation,

b. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

c. the misrepresentation is made with the intention that it should be acted on by the other party, and

d. the other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means a false statement of fact or a promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

Answer "Yes" or "No."

Answer: <u>Yes</u>

Fath objected to the submission of the broad form question because it combined valid and invalid theories, contending there was no evidence to support fraud.

We have determined that there was no evidence of fraud. Because there was no evidence of fraud, it was an invalid theory. *See Harris County v. Smith,* 96 S.W.3d 230, 232 (Tex.2002) (claim invalid if no evidence to support it). Thus, the inclusion of fraud as a ground for breach of guaranty commingled an invalid theory. Rockhaven argues in its appellate brief that the jury "quickly and assuredly" found that Fath breached the guaranty on the basis of Fath Forest's gross negligence or wilful misconduct because it quickly returned a unanimous verdict on liability. Fath contends that Rockhaven's argument highlights the problem with question one. We agree. It is impossible to know from the jury's answer to question one whether it answered yes on the basis of fraud, an invalid theory.

When a trial court submits a broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is necessary when the appellate court is unable to determine whether the jury based its answer on an invalid theory. *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 388 (Tex.2000). In *Casteel,* the trial court submitted a single liability question containing thirteen theories, four of which were invalid. Because it was not possible to determine that the jury's answer was not based on an invalid theory, the Court held the error was harmful. *Id.* at 389.

It is impossible for this Court to conclude that the jury's answer to the breach of guaranty question was not based on the improperly submitted theory of fraud. Accordingly, we presume the charge error was harmful. *See Casteel,* 22 S.W.3d at 388.

We conclude the trial court erred in its submission of question one to the jury. Accordingly, we sustain appellant's second issue.[6]

We reverse the trial court's judgment and remand this case for a new trial.

---

6. In light of this Court's holdings, it is not necessary to address appellant's first issue with respect to the factual sufficiency of the evidence regarding the gross negligence and waste grounds for breach of the guaranty.