**Affirmed in Part, Reversed and Remanded in Part, and Opinion Filed April  25, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00876-CV**

**RUDOLPH RIVAS, AN INDIVIDUAL, AND MCCH 2009 LLC, Appellants**
**V.**
**BRANDON PITTS, AN INDIVIDUAL, LINDA PITTS, AN INDIVIDUAL, REED PITTS, AN INDIVIDUAL, JAN TURNER, AN INDIVIDUAL, AND PITTS AND PITTS, CERTIFIED PUBLIC ACCOUNTANTS, Appellees[1]**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-03899-2020**

## MEMORANDUM OPINION

Before Justices Molberg, Partida-Kipness, and Carlyle
Opinion by Justice Partida-Kipness

Appellants Rudolph Rivas (Rivas) and MCCH 2009 LLC (MCCH) appeal the

trial court's order granting appellees' traditional and no-evidence motion for

summary judgment and dismissing Rivas and MCCH's professional negligence,

contract, and tort claims. The trial court rendered summary judgment without stating

the basis for its ruling. We conclude the trial court erred by granting summary

---

[1] We will refer to the Appellees collectively as the Accountants.

judgment on Rivas and MCCH's fiduciary duty and fraud claims, but properly granted summary judgment on their professional negligence, gross negligence, and contract claims. We reverse the judgment as to the fiduciary duty and fraud claims and remand for further proceedings consistent with this opinion. We affirm the judgment dismissing Rivas and MCCH's claims for professional negligence, gross negligence, and breach of contract.

## BACKGROUND

Rivas is a custom home builder and real estate developer in the DFW metroplex. He transacts his homebuilding and real estate business through more than twenty wholly owned limited liability companies owned and/or controlled by Rivas or other family members. Some of these entities purchase and hold real estate, some construct homes, and some provide payroll and insurance functions. MCCH is one of Rivas' entities that owned real estate for Rivas' homebuilding operations.

Pitts & Pitts (the Firm) is an accounting firm in Allen, Texas. Its principals, Linda and Brandon Pitts, are certified public accountants (CPAs). Reed Pitts is Brandon and Linda's son and is also a CPA. Jan Turner is a CPA who maintains her own accounting practice and provides seasonal assistance to the Firm as an independent contractor.

In 2007, Rivas engaged Brandon and the Firm to provide Rivas and the Rivas entities with professional accounting services. Rivas asserts that he required a CPA with knowledge of the construction business, and Brandon represented he and the

Firm had the required unique knowledge and had represented other construction clients. Rivas maintains he "relied very heavily on [Brandon's] expertise and representations" because Rivas did not have the time or knowledge required for construction accounting. Brandon issued the first compilation of financial statements for the Rivas entities on December 31, 2007. Brandon and the Firm continued to provide accounting services to the Rivas entities for the next nine years. Brandon prepared quarterly compilations, tax returns, and federal and franchise tax returns for the Rivas entities and provided business consulting to Rivas as needed.

According to Rivas, the scope of the services provided by the Accountants expanded over time as Rivas' business grew and far exceeded the usual services provided by an accounting firm. Rivas contends routine accounting services include compiling financial statements and preparing tax returns. Brandon and the Firm provided those routine services to the Rivas entities. The summary judgment record shows they also performed additional services for the Rivas entities. Those additional services included setting up QuickBooks Templates, creating journal entries, defining the ledger accounts, training Rivas' staff to pay contractors, and working closely with Jenny White, Rivas' "CFO/Closing Coordinator," to establish accounting procedures for overhead distribution per closing, accruals, and other activities related to various aspects of residential construction. Brandon also attended quarterly meetings with Rivas to advise Rivas and his staff on strategies for technology and software upgrades, borrowing and lending strategy, risk

management, tax strategy, equity management for growth, corporate entity structures, and ownership. Brandon also advised Rivas which revenues to recognize and which to save until the next quarter, to ensure that the companies' debt never exceeded six times the shareholder equity. Rivas describes Brandon and the Firm as a "de-facto Chief Accounting Officer" for the Rivas entities.

From 2007 through 2014, no engagement agreements or written contracts existed regarding the Accountants' work for the Rivas entities. In 2015 and 2016, however, some of the services being performed by the Accountants were reduced to a written engagement letter between the Firm and the Rivas entities. The 2015 and 2016 engagement letters were both signed by Rivas as President of M Christopher Custom Homes & Affiliates on November 1, 2016. The engagement letters provided that the Firm was engaged to perform "a compilation engagement with respect to the consolidated financial statements" comprised of the quarterly balance sheets and the related statements of income and owner's equity, and cash flows for each quarter and year to date for 2015 and 2016. The letters described the objective of the engagement as follows:

> The objective of our engagement is to apply accounting and financial reporting expertise to assist you in the presentation of financial statements without undertaking to obtain or provide any assurance that there are no material modifications that should be made to the financial statements in order for them to be in accordance with accounting principles generally accepted in the United States of America.

The engagement letters further state that the Firm would also present supplementary information in the form of the Consolidated Statement of Income - Percentage of

Completion Method with the compiled financial statements for purposes of additional analysis. The engagement letter further states the supplementary information would be compiled from information that is "the representation of management," and the Firm would provide no assurance and express no opinion or conclusion on that supplementary information. According to the engagement letter, the Firm is not responsible for auditing or reviewing the financial statements and cannot be relied on to identify or disclose any financial statement misstatements, including those caused by fraud or error. The Rivas entities were responsible for providing the Firm access to all relevant information and unrestricted access to persons within the Company of whom the Firm may make necessary inquires and obtain additional information for preparing the financial statements. Rivas maintains the engagement letters did not include every service to be provided by the Firm.

In 2016, the consolidated financial statements reflected the shareholders' equity exceeded $10,000,000. Rivas questioned the accuracy of the equity calculation and asked the Accountants to reconcile shareholder equity. Rivas claims he hired CPA Pamela Whipple to conduct an independent accounting of all shareholder equity accounts and records because the Accountants failed to complete the requested reconciliation after multiple requests. Whipple discovered the Work in Progress (WIP) calculations contained multiple errors and material misstatements. Whipple also discovered duplicate asset accounting entries created by the Accountants. Rivas claims the errors and misstatements resulted in an intentional

and substantial overstatement of borrowing bases, shareholders' equity, and a nearly $5,000,000 reduction of the Rivas entities' net worth.

After Whipple's audit, Brandon and the Firm provided Rivas five new versions of the financial statements. Whipple audited each new version and found similar and sometimes identical errors. Whipple approved the sixth revision, which showed the reduced equity for the Rivas entities. Rivas provided the sixth restated financial statements to the banks that financed the Rivas entities' purchases of lots. According to Rivas, the restatement required Rivas to immediately deposit millions of dollars in financial institutions to avoid defaults and capital calls. Rivas also contends the materially misstated financial statements concerned the banks and resulted in the banks' decision to inform Rivas that he did not meet the borrowing base ratio covenants and to refuse any subsequent extension of new or continued credit under the previous agreements. The lack of continued access to necessary loans and capital negatively impacted Rivas and his entities and led to the failure of the businesses. The Firm disengaged from and ceased providing services to the Rivas entities on January 3, 2018.

Rivas and MCCH filed the underlying lawsuit on August 14, 2020, and asserted the following claims:

- Professional negligence, accounting malpractice, and gross negligence against the Accountants;

- Breach of fiduciary duty against the Accountants;

- Breach of contract and vicarious liability against the Firm; and

- Intentional misrepresentation and fraud against Brandon and the Firm.

The Accountants answered and ultimately filed a traditional and no-evidence motion for summary judgment as to each claim. The Accountants' motion asserted Rivas and MCCH's claims should be dismissed because (1) Rivas and MCCH judicially admitted in a federal bankruptcy proceeding that the Accountants' conduct was not the proximate cause of their injuries; (2) the professional negligence and gross negligence claims are barred by the two-year statute of limitations, (3) any alleged breach of contract occurring before August 14, 2016 is barred by the four-year statute of limitations, (4) the breach of fiduciary duty, breach of contract, and fraud claims are barred by the anti-fracturing rule; and (5) no evidence supports the claims asserted by Rivas and MCCH. The trial court granted the Accountants' motion and dismissed all claims asserted by Rivas and MCCH. The judgment does not state the ground on which the motion was granted. This appeal followed.

## STANDARD OF REVIEW

We review orders granting summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If no grounds are specified for the ruling, we must affirm on any meritorious grounds on which judgment was requested. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). If the appellant does not challenge all possible grounds on which summary judgment could have been granted, we must accept the validity of the unchallenged grounds and affirm

the adverse ruling. *Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423 (Tex. App.—Dallas 2009, no pet.).

When a party files a hybrid summary judgment motion on both no-evidence and traditional grounds, we generally first review the trial court's judgment under the no-evidence standard of review. Should we determine summary judgment was appropriate under the no-evidence standard, we need not address issues related to the traditional summary judgment motion. However, if the court is required to affirm the trial court's ruling on traditional grounds, then we only address the traditional grounds. *Regency Dev. & Constr. Services, LLC v. Carrington*, No. 05-18-00564-CV, 2019 WL 4051831, at *3–4 (Tex. App.—Dallas Aug. 28, 2019, no pet.) (internal citations omitted).

## I. No-Evidence Motion for Summary Judgment

The legal sufficiency standard that governs directed verdicts also governs no-evidence summary judgment motions. *RTLC AG Prods., Inc. v. Treatment Equip. Co.*, 195 S.W.3d 824, 829 (Tex. App.—Dallas 2006, no pet.). To defeat a no-evidence motion for summary judgment, the non-movant must produce evidence regarding each challenged element of each challenged claim that "would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v Ridgeway*, 135 S.W.3d 598, 601 (Tex. 2004); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules

of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch*, 118 S.W.3d at 751 (internal quotation omitted). In reviewing a no-evidence summary judgment, we consider evidence in the light most favorable to the non-movant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *De La Cruz*, 526 S.W.3d at 592.

## II. Traditional Motion for Summary Judgment

With respect to a traditional motion for summary judgment, we require the movant to demonstrate the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant satisfies this burden, to avoid summary judgment the nonmovant then bears the burden of demonstrating a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84. We credit all evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in its favor. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002).

## WAIVER

As a preliminary matter, we must address which causes of action and issues are before us for review. Although Rivas and MCCH appealed the entire summary

judgment order, they have waived review of certain issues. First, Rivas and MCCH concede their negligence/professional malpractice and gross negligence claims are barred by limitations. We, therefore, affirm the summary judgment as to those causes of action.

Second, we conclude Rivas and MCCH waived the argument that their breach of contract claims were not barred by the statute of limitations because they raised that argument for the first time in a reply brief. *See Metro. Transit Auth. of Harris Cnty. v. Douglas*, 544 S.W.3d 486, 495 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("Arguments raised for the first time in a reply brief are waived."); *Dallas Cnty. v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pet. denied) (issue raised for first time in reply brief is not properly before the court on appeal). As such, we affirm the summary judgment order dismissing the breach of contract claims. *See Waid v. Target Corp.*, No. 05-20-00542-CV, 2023 WL 386323, at *2 (Tex. App.—Dallas Jan. 25, 2023, no pet. h.) (mem. op.) ("When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious.") (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)); *see also Groba v. City of Galena Park*, No. 05-21-00305-CV, 2022 WL 16549068, at *2 (Tex. App.—Dallas Oct. 31, 2022, no pet.) (mem. op.) ("The trial judge did not specify the basis for granting summary judgment, so we must affirm if any of the grounds raised by the City are meritorious."); *LaTouche v.*

*Perry Homes, LLC*, 606 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (same).

For these reasons, we affirm the summary judgment order dismissing Rivas and MCCH's claims for professional negligence, gross negligence, and breach of contract, and focus the remainder of our analysis on the breach of fiduciary duty and fraud claims.

## ANALYSIS

Rivas and MCCH present three reasons why the summary judgment order should be reversed, and the case remanded. First, they argue the statements made in the bankruptcy proceeding were not judicial admissions. Second, they contend their claims for breach of fiduciary duty and fraud are not barred by the anti-fracturing rule. Third, they maintain they presented more than a scintilla of evidence to prove each element of their claims. We will address each issue in turn.

## I. Judicial Admissions

M. Christopher Residential LLC (MC Residential or the debtor), an entity created by Rivas and his family members, filed for bankruptcy on February 17, 2017. Two years later, the Chapter 7 Trustee, Mark Weisbart, filed an adversary proceeding against Rivas and multiple entities in which Rivas purportedly owned an interest. The Trustee alleged Rivas transferred all assets out of the debtor and into the other Rivas entities and left the liabilities for those assets on the debtor's books and records. The Trustee argued Rivas planned the bankruptcy to "offload debt"

from the Rivas entities to the debtor, give "the illusion" to creditors that the Rivas entities had greater revenue, and prevent the denial of funding to those entities.

The Accountants contend all of Rivas and MCCH's causes of action in this proceeding are barred because Rivas and MCCH judicially admitted in the adversary proceeding that the Accountants' conduct did not proximately cause their damages. Specifically, the Accountants maintain the following answers to the Trustee's complaint in the adversary proceeding constitute judicial admissions:

COMPLAINT ¶ 15:

According to Rivas, on October 31, 2016 at a meeting with twenty-eight (28) lenders, Clint Taylor, counsel for Pitts & Pitts CPA ("P&P") (the Debtor's CPA), explained he made a huge accounting mistake that had been discovered by a third party audit and this mistake required shareholder equity to be greatly adjusted.

ANSWER:

The defendants admit the allegations in Paragraph 15 only to the extent that an audit revealed an accounting mistake by Pitts & Pitts, which required numerous adjusting entries including an adjustment to shareholder equity, however defendants deny that Plaintiff is entitled to any relief whatsoever in this action.

COMPLAINT ¶ 16:

Rivas further claimed that this accounting adjustment caused twelve (12) of the lenders to stop making new loans at the end of 2016. Because no new loans were given, Debtor could not fund $800,000.00 to $1,000,000.00 per week in draws and the entire operation failed, resulting in this present Bankruptcy Case.

ANSWER:

The defendants deny the allegations in Paragraph 16, but admit that market conditions coupled with changed financial conditions caused

the operation to fail. Defendants deny, however, that Plaintiff is entitled to any relief whatsoever in this action.

According to the Accountants, the answers to paragraphs fifteen and sixteen constitute judicial admissions by Rivas and MCCH that (1) the Restated Consolidated Financial Statements did not cause "their lenders to not fund their loans," and (2) "the Restated Consolidated Financial Statements did not cause their business to fail." We disagree.

A judicial admission is a formal waiver of proof usually found in pleadings or the stipulations of the parties. *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980); *Peck v. Peck*, 172 S.W.3d 26, 31 (Tex. App.—Dallas 2005, pet. denied). A judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it. *Peck*, 172 S.W.3d at 31 (first citing *Lee v. Lee*, 43 S.W.3d 636, 641 (Tex. App.—Fort Worth 2001, no pet.), then citing *Dutton v. Dutton*, 18 S.W.3d 849, 853 (Tex. App.—Eastland 2000, pet. denied), and then citing *Roosevelt v. Roosevelt*, 699 S.W.2d 372, 374 (Tex. App.—El Paso 1985, writ dism'd)). This rule is based on the public policy that it would be absurd and manifestly unjust to permit a party to recover after he has sworn himself out of court by a clear and unequivocal statement. *Murphy*, 430 S.W.3d at 618; *Peck*, 172 S.W.3d at 31; *Khan v. GBAK Props. Inc.*, 371 S.W.3d 347, 357 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

The elements commonly recited for a judicial admission are: (1) a statement made during the course of a judicial proceeding; (2) that is contrary to an essential

fact or defense asserted by the person making the admission; (3) that is clear, deliberate, and unequivocal; (4) that, if given conclusive effect, would be consistent with public policy; and (5) that is not destructive of the opposing party's theory of recovery. *Murphy v. Williams*, 430 S.W.3d 613, 618 (Tex. App.—Dallas 2014, pet. denied) (first citing *Lee*, 43 S.W.3d at 641–42, and then citing *Mendoza*, 606 S.W.2d at 694).

Pleadings in a particular case, for purposes of use in that case, are regarded as formal judicial admissions. *Cameron County v. Velasquez*, 668 S.W.2d 776, 782–83 (Tex. App.—Corpus Christi-Edinburg 1984, writ ref'd n.r.e.) (on rehearing) (citations omitted). Pleadings in another case that are inconsistent with a party's position in a present action are quasi-admissions, but are generally not conclusive. *Id.* However, a quasi-admission is treated as a judicial admission when it appears: (1) the declaration was made during the course of a judicial proceeding; (2) the statement is contrary to an essential fact embraced in the declarant's theory of recovery or defense; (3) the statement is clear and deliberate, and not a mistake; (4) giving conclusive effect to the admission will not be contrary to the public policy on which the rule is based; and (5) the statement is not destructive of the offering party's theory of recovery. *Id.* (citing *Mendoza*, 606 S.W.2d at 694).

For example, in *Lee*, an amended inventory of the estate listed three CDs as community property. 43 S.W.3d at 641. Appellants' counsel told the trial court he had no objection to the amended inventory being filed and did not challenge the

amended inventory. *Id.* at 642. Then, during the hearing to approve the inventory, the trial court asked appellants' counsel if he agreed "that once [appellee's counsel] has filed the amended inventory showing the modifications as agreed upon here today [concerning two pieces of real property], that the Court may go ahead and approve the inventory?" *Id.* Counsel responded, "I do, Your Honor." *Id.* The appellate court concluded counsel's statement "when read in context of the hearing, is a clear and unequivocal approval of the inventory and the characterization of the CDs as community property." *Id.* That approval was contrary to appellants' defense that the CDs were not part of the community property estate, supported appellee's theory of recovery, and supported public policy. *Id.* Appellants were, therefore, barred from arguing or presenting evidence that the CDs were not community property. *Id.*

Similarly, in *DowElanco v. Benitez*, an admission of Texas residency in a federal court proceeding barred the party from denying Texas residency in a subsequent state court proceeding 4 S.W.3d 866, 871 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.). "Because Rios's admission of Texas residency was part of his successful argument that the federal court lacked subject matter jurisdiction because there was no diversity of citizenship, we are also satisfied the statement in question was deliberate and not a mistake." *Id.* The court concluded the pleadings in the federal court case should be given conclusive effect in the state court proceeding as judicial admissions.

Unlike the statements in *Lee* and *DowElanco*, the statements at issue here do not meet the definition of judicial admissions. In *Lee* and *DowElanco*, the appellants' statements in the proceeding were in direct conflict with the statements deemed to be judicial admissions. *Lee*, 43 S.W.3d at 642 (community property versus not community property); *DowElanco*, 4 S.W.3d at 871 (Texas resident in federal court but not a Texas resident in state court). Here, the statements in the adversary proceeding are not contrary to an essential fact or defense asserted by Rivas and MCCH here. Rivas and MCCH asserted below that accounting errors made by Brandon and the Firm required the revision of consolidated financial statements that showed a decrease in shareholder equity, caused lenders to withdraw or deny funding to the Rivas entities, and damaged the entities. The answer to paragraph 15 of the adversary proceeding petition, like the assertions made here, references accounting mistakes by the Firm and the resulting adjustments to shareholder equity. It is, thus, consistent with the essential facts asserted by Rivas and MCCH here. As for the answer to paragraph 16, that statement is not contrary to an essential fact or defense asserted here. As a preliminary matter, paragraph 16 relates to damage to the debtor and the reasons for the debtor filing bankruptcy. Debtor, however, is not a party to the underlying proceeding here, and the damages of the debtor are not at issue here. The answer to paragraph 16 is, therefore, irrelevant to this proceeding. Moreover, the allegations in this case are consistent with the statement that "market conditions coupled with changed financial conditions caused the operation to fail."

In both proceedings, Rivas and MCCH contend the actions of Brandon and the Firm resulted in changed financial conditions for the entities and caused the businesses to fail. At most, the answer to paragraph 16 references an additional reason for the debtor's demise (i.e., market conditions). We do not find the answers to paragraph 16 inconsistent with the facts asserted by Rivas and MCCH here.

Further, the statements in the adversary proceeding were not clear, deliberate, and unequivocal. The judicial admissions in *Lee* and *DowElanco* deliberately stated an unequivocal fact. *Lee*, 43 S.W.3d at 642 (stating counsel agreed the court could approve the inventory listing the CDs as community property); *DowElanco*, 4 S.W.3d at 871 (Rios admitted he was a Texas resident). No such fact statements were made here. On the contrary, Rivas and MCCH merely admitted or denied allegations made by the Trustee in his petition. Neither those allegations nor Rivas and MCCH's responses clearly, deliberately, and unequivocally stated the Restated Consolidated Financial Statements did not cause "their lenders to not fund their loans," and "did not cause their business to fail." Indeed, the Restated Consolidated Financial Statements are not mentioned in either paragraph 15, paragraph 16, or the responses to those paragraphs.

Finally, we conclude it would be inconsistent with public policy to give the answers to a petition in a federal proceeding conclusive effect here. The adversary proceeding was filed within the bankruptcy of an entity that is not a party to the underlying proceeding. The allegations in the adversary proceeding petition were

–17–

related to the debtor's claimed damages, not the damages sought by Rivas and MCCH in this proceeding. The answers to paragraphs 15 and 16 were broadly written and did not purport to establish specific facts that were later contradicted in the state court proceeding. Under this record, treating the answers as judicial admissions is contrary to public policy.

We conclude the answers to paragraphs 15 and 16 of the adversary proceeding do not constitute judicial admissions that the Accountants did not proximately cause Rivas and MCCH's damages. We sustain Rivas and MCCH's first issue and conclude the trial court erred to the extent it granted summary judgment based on a finding that the statements in the adversary proceeding were binding judicial admissions in this proceeding.

## II. Anti-Fracturing Rule

Texas courts do not allow plaintiffs to convert what are really negligence claims into claims for fraud, breach of contract, breach of fiduciary duty, or violation of the DTPA. *Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App.—Dallas 2007, pet. denied). The anti-fracturing rule prevents such conversions. *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied); *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr. P.C.*, 284 S.W.3d 416, 426–27 (Tex. App.—Austin 2009, no pet.).

The anti-fracturing rule is based on the nature of a professional negligence[2] claim. *Parker v. Glasgow*, No. 02-15-00378-CV, 2017 WL 2686474, at *8 (Tex. App.—Fort Worth June 22, 2017, no pet.) (mem. op.) (citing *J.A. Green Dev. Corp. v. Grant Thornton, LLP*, No. 05–15–00029–CV, 2016 WL 3547964, at *6 (Tex. App.—Dallas June 28, 2016, pet. denied) (mem. op.)). The gravamen of a professional negligence complaint focuses on the quality or adequacy of the attorney's or accountant's representation. *J.A. Green Dev.*, 2016 WL 3547964. A claim pled in the alternative to a professional negligence claim is, therefore, barred by the anti-fracturing rule if the crux of the alternative claim focuses on the quality or adequacy of the professional's representation. *See Parker*, 2017 WL 2686474, at *8 (first citing *Echols v. Gulledge & Sons, LLC*, No. 10-13-00419-CV, 2014 WL 4629056, at *4 (Tex. App.—Waco Sept. 11, 2014, pet. denied) (mem. op.), then citing *Murphy*, 241 S.W.3d at 692–93, and then citing *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)).

Merely characterizing conduct as a "misrepresentation" or "conflict of interest" does not necessarily transform what is really a professional negligence claim into a fraud or breach of fiduciary duty claim. *Murphy*, 241 S.W.3d at 697.

---

[2] Rivas and MCCH argued in the trial court that the anti-fracturing rule applies only to professional negligence claims asserted against attorneys, not against accountants. Rivas and MCCH do not address this argument on appeal. We express no opinion on whether the anti-fracturing rule is limited to attorney malpractice claims. We note, however, that one of our sister courts has applied the anti-fracturing rule to professional negligence claims against an accountant. *Tex. Pharmomedical Exps., Inc. v. Wang*, No. 14-19-00888-CV, 2021 WL 2325085, at *6 (Tex. App.—Houston [14th Dist.] June 8, 2021, pet. denied) (mem. op.).

Whether certain allegations asserted against an attorney or accountant and labeled as breach of fiduciary duty or fraud are actually claims for professional negligence is a question of law to be determined by the court. *Won Pak*, 313 S.W.3d at 457; *Murphy*, 241 S.W.3d at 692. Our sister court discussed the analysis for determining when a single legal malpractice claim has been fractured improperly into multiple causes of action:

> If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim. If, however, the client's complaint is more appropriately classified as another claim, for example, fraud, DTPA, breach of fiduciary duty, or breach of contract, then the client can assert a claim other than negligence.

*Deutsch v. Hoover, Bax & Slovacek*, 97 S.W.3d 179, 189 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citations omitted). In other words, the claimant must do more than "merely reassert the same claim for legal malpractice under an alternative label." *Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

A professional malpractice claim is based on negligence. *Tex. Pharmomedical Exps., Inc. v. Wang*, No. 14-19-00888-CV, 2021 WL 2325085, at *6 (Tex. App.—Houston [14th Dist.] June 8, 2021, pet. denied) (mem. op.) (citing *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989)). To prevail in a professional negligence case against an accountant, the plaintiff must prove (1) the accountant owed a duty to the plaintiff; (2) the accountant breached that duty; (3) the breach caused the

plaintiff's injuries; and (4) damages occurred. *Tex. Pharmomedical Exports*, 2021 WL 2325085, at *6 (citing *Duerr*, 262 S.W.3d at 76).

Accountants owe their clients a common law duty to exercise reasonable care. *Ling v. BDA&K Bus. Services, Inc.*, 261 S.W.3d 341, 347 (Tex. App.—Dallas 2008, no pet.). This duty of reasonable care requires the accountant to exercise the degree of care, skill, and competence that reasonable members of the profession would exercise under similar circumstances. *Id.* The duty is usually discharged by complying with recognized industry standards. *Id.*

In their motion for summary judgment, the Accountants argued Rivas and MCCH's claims for breach of fiduciary duty, breach of contract, and intentional misrepresentation/fraud were barred by the anti-fracturing rule. We disagree as to the tort claims because the gravamen of those claims focus on acts and omissions separate and apart from the acts forming the basis of the professional negligence claims.

The focus of the professional negligence claims here is that the Accountants failed to properly prepare the Consolidated Financial Statements in accordance with industry standards. To determine if Rivas and MCCH impermissibly fractured their professional negligence claim, we must compare the crux of that claim with the gravamen of their complaints for breach of fiduciary duty, fraud, and breach of contract. *See Deutsch*, 97 S.W.3d at 189.

## A. Breach of Fiduciary Duty

In their petition and response to the Accountants' motion for summary judgment, Rivas and MCCH asserted a fiduciary relationship existed with the Accountants because the Accountants performed additional services for them outside of normal accounting and tax services. They further alleged Brandon and the Firm "operated as the defacto Chief Accounting Officer" for nearly a decade. As a result, Rivas and MCCH "were accustomed to being guided by the judgment and advice of" the Accountants. Rivas and MCCH also maintained the Accountants breached the fiduciary duties owed Rivas and MCCH by failing to disclose their lack of independence, designing critical systems of internal control without providing safeguards for Rivas and MCCH, accepting insider discounts, accessing the accounting system and making adjusting entries at their own discretion and without management approval, and disregarding information provided by Rivas. Rivas and MCCH also complained that Brandon and the Firm published erroneous financial statements without Rivas's approval and advised Rivas to permit Brandon to create fictitious assets to camouflage the errors in the financial statements.

The focus of the breach of fiduciary duty claim was on conduct other than the preparation of the Consolidated Financial Statements and beyond the duty of ordinary care owed to Rivas and MCCH regarding the preparation of those documents. Indeed, this claim encompassed claims against Brandon and the Firm for failing to act independently, acting without obtaining management authorization,

–22–

and providing Rivas with advice that could result in criminal liability. We conclude the breach of fiduciary duty claim was not barred by the anti-fracturing rule because Rivas and MCCH did more than "merely reassert the same claim for [professional] malpractice under an alternative label." *See Duerr*, 262 S.W.3d at 70.

## B.     Intentional Misrepresentation/Fraud

Similarly, the intentional misrepresentation/fraud claim addressed conduct outside of the preparation of the Consolidated Financial Statements. For example, Rivas and MCCH pleaded that Brandon misrepresented himself and his staff as QuickBooks proficient. Rivas and MCCH also presented pleadings and evidence showing Brandon and the Firm knowingly misrepresented to the banks that the financial statements were not materially misleading. The gravamen of this claim was conduct other than the quality or adequacy of Brandon and the Firm's preparation of the Consolidated Financial Statements. As such, the intentional misrepresentation/fraud claim was not barred by the anti-fracturing rule.

## C.     Breach of Contract

The gravamen of Rivas and MCCH's breach of contract claim is that the Accountants agreed to prepare the Consolidated Financial Statements properly and failed to do so. That complaint, like the professional negligence claim, focuses on the quality and adequacy of the accounting work performed by the Accountants. Under this record, we conclude the breach of contract claim is nothing more than a recasting of the professional negligence claim and is barred by the anti-fracturing

rule. *See Parker*, 2017 WL 2686474, at *8; *see also Won Pak*, 313 S.W.3d at 457–59.

For these reasons, we conclude the breach of fiduciary duty and intentional misrepresentation/fraud claims are not barred by the anti-fracturing rule. We reverse the summary judgment order to the extent the trial court dismissed those claims based on the anti-fracturing rule.

## III.    The No Evidence Motion

In their final issue, Rivas and MCCH argue the summary judgment order should be reversed because they presented more than a scintilla of probative evidence to support each element of their claims. *See JLB Builders, LLC v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021) ("[A] no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact.") (quoting *King Ranch, Inc.*, 118 S.W.3d at 751); *Ridgeway*, 135 S.W.3d at 601 (to defeat a no-evidence motion for summary judgment, the non-movant must produce evidence regarding each challenged element of each challenged claim that "would enable reasonable and fair-minded people to differ in their conclusions."). We agree in part, as explained below.

### A.    Breach of Fiduciary Duty

Rivas and MCCH asserted breach of fiduciary duty claims against Brandon, Linda, the Firm, Reed, and Jan. The elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the

–24–

defendant breached his fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant. *D & J Real Estate Services, Inc. v. Perkins*, No. 05-13-01670-CV, 2015 WL 3507323, at *4 (Tex. App.—Dallas June 4, 2015, pet. denied) (mem. op.) (citing *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied). In the motion for summary judgment, the Accountants asserted there was no evidence of the existence of a fiduciary relationship between the parties, breach of any alleged fiduciary duty owed, or that any alleged breach caused Rivas and MCCH to sustain damages.

We first address this claim as alleged against Reed Pitts and Jan Turner. We conclude the trial court correctly determined there was no evidence to support a fiduciary duty against those accountants. Rivas testified in his deposition that he did not know what services Reed or Jan provided to the Rivas Entities. In an affidavit, Reed explained he received his CPA license in January 2014, but had not worked at the Firm since June 2013. Moreover, he provided no accounting services to Rivas, MCCH, or related entities when he worked at the Firm. Similarly, Jan testified in her deposition that she began working as an independent contractor for the Firm in the Spring of 2015. However, she performed work pertaining to Rivas and his entities for only one day—November 1, 2016. That work entailed reviewing the accounting schedules and journal entry of the accumulated depreciation and verifying the assets were on Brandon's Excel spreadsheet and that the amounts matched. She did not interact with Rivas or provide advice to him regarding those

tasks. Under this record we conclude the trial court correctly dismissed the fiduciary duty claims against Reed and Jan because there was no evidence of a fiduciary relationship with Rivas or MCCH, and no evidence Reed or Jan breached any duty allegedly owed Rivas or MCCH. We affirm the dismissal of the fiduciary duty claim against Reed and Jan.

The fiduciary duty claims against Brandon, Linda, and the Firm are a different story. In response to the summary judgment motion, Rivas and MCCH presented Rivas's own affidavit testimony, the expert report and accompanying affidavit of Paula Field, CPA, the deposition of Brandon Pitts, the original petition, the 2015 and 2016 engagement letters, MCCH's Consolidated Procedures, and the March, October, and November Compiled Financial Statements. This evidence included more than a scintilla of proof to raise a fact issue on each element of the fiduciary duty claim.

For example, in his affidavit, Rivas stated that he and the Rivas entities "relied substantially on" the Firm and Brandon for preparation of the consolidated financial statements and the provision of many additional services. Rivas maintained that the Firm and Brandon acted as a de facto Chief Accounting Officer, and he relied on their performance of that role and function. His reliance on Brandon and the Firm had existed for nearly a decade and was evidenced in part by their unrestricted access to the entities' books and records. Rivas also asserted that Brandon and the Firm were not independent and breached the fiduciary duties owed to Rivas and the Rivas

entities because they prepared and inputted erroneous journal entries without approval from management, erroneously calculated WIP, kept key accounting records at their office, and published erroneous financial statements to lenders without Rivas's approval.

Rivas's expert, Field, agreed with Rivas's assessment and provided further competent evidence to support each element of the fiduciary duty claim. Field stated that Brandon developed a fiduciary duty in his role with Rivas as a result of the scope of the work he performed for Rivas and the Rivas entities and his lack of independence when performing that work. She also stated that Rivas was justified in placing such confidence in Brandon and the Firm because of the length of their business relationship and the scope of work performed by Brandon and the Firm. She agreed that Brandon acted as a member of management, had duties and responsibilities similar to that of a Chief Accounting Officer, and "breached his independence by threat of management participation." Further, Brandon held himself out as independent to the users of the compiled financial statements and did not disclose various impairments to his independence, including past family ties with Rivas and his family, and the lack of an engagement letter during the first eight years of the relationship. It is Fields's opinion that Brandon breached fiduciary duties owed to Rivas and MCCH. Examples of his breaches included failing to obtain Rivas's approval for adjustments to the accounting, failing to use the company provided inventory sheet for calculating the WIP, making erroneous inputs into a

separate set of records complete and apart from the Company QuickBooks accounting system, and acting as a member of management rather than a controller. According to Fields, had those breaches not occurred, the business could have remained operational and begun thriving in the current home shortage environment.

Under this record, we conclude Rivas presented more than a scintilla of competent evidence to raise a fact question on each element of the fiduciary duty claim. The trial court, therefore, erroneously dismissed that claim on no evidence grounds.

### B.    Intentional Misrepresentations/Fraud

Rivas and MCCH asserted an intentional misrepresentation/fraud claim against Brandon and the Firm. The elements of a cause of action for fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). A claim of intentional misrepresentation has the same elements as a fraud claim. *Smith v. Tilton*, 3 S.W.3d 77, 82 n. 3 (Tex. App.-Dallas 1999, no pet.). Accordingly, our discussion of fraud includes intentional misrepresentation. *Fath v. CSFB 1999-C1 Rockhaven Place Ltd. P'ship*, 303 S.W.3d 1, 5 (Tex. App.—Dallas 2009, pet. denied).

In the motion for summary judgment, the Accountants argued there was no evidence that Brandon or the Firm "ever knowingly made a material misrepresentation" to Rivas or MCCH, "ever intended for [Rivas or MCCH] to rely on any alleged misrepresentations, that Rivas or MCCH "ever actually relied on any such misrepresentations or that any alleged misrepresentation proximately caused [Rivas and MCCH's] alleged damages." The summary judgment evidence submitted by Rivas and MCCH, however, provided more than a scintilla of probative evidence to raise a genuine issue of material fact on each element of the fraud claim.

For example, Rivas and MCCH pleaded and Rivas testified that Brandon misrepresented himself and his staff as QuickBooks proficient. Rivas and MCCH also presented pleadings and evidence showing Brandon and the Firm knowingly misrepresented to the banks that the financial statements were not materially misleading. According to Rivas, he relied on these misrepresentations, Brandon made such misrepresentations with the intent that Rivas rely on misrepresentations and hire his company to perform not only the accounting work, but also the advanced jobs of Chief Accounting Officer. He further testified that Brandon and the Firm's failure to properly use the QuickBooks Enterprise accounting software and misrepresentations regarding the errors in the financial statements and ledger were direct cause of Rivas' damages, including the decision by his lenders to immediately cease all loans and business with the Rivas entities. Fields agreed that Brandon and the Firm concealed material errors.

Under this record we conclude there was more than a scintilla of probative evidence to raise a fact question on each element of the fraud claim. Summary judgment was, therefore, erroneously granted on that claim.

## C.    Vicarious Liability

Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of an employee. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018); *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541–42 (Tex. 2002) (quoting *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)). Rivas and MCCH pleaded below that the Firm is vicariously liable for the tortious acts of Brandon, Linda, Reed, and Jan. The Accountants did not move for summary judgment on the vicarious liability theory. However, by dismissing all claims asserted against the Accountants, the trial court concluded there was no evidence Brandon, Linda, Reed, and Jan committed a tortious act. As such, the vicarious liability theory asserted by Rivas and MCCH was negated. On remand, Rivas and MCCH's vicarious liability theory may not be repleaded against the Firm in relation to the acts of Reed and Jan because no claims remain against those individuals. They may, however, replead vicarious liability as to the acts of Brandon and Linda.

## D.    Breach of Contract

Rivas and MCCH asserted a breach of contract claim against the Firm. In the summary judgment motion, the Firm argued that claim fails as a matter of law

because there is no evidence of a valid contract between the parties and no evidence the Firm breached any alleged contract. We agree.

The following elements are required for the formation of a valid and binding contract: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.). The elements of written and oral contracts are the same and must be present for a contract to be binding. *Id.* In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding the communications. *Id.* Here, Rivas testified that the contract giving rise to the breach of contract claim is the contract made "in 2007" where the Rivas entities "would write the checks and Pitts & Pitts would do everything else." He also testified that he does not recall any written contracts saying Rivas would write the checks and the Firm would do everything else. The breach of contract claim was, therefore, premised on an alleged oral contract. Rivas presented no evidence, however, to show the existence of an oral contract. The record includes no evidence of communications between the parties concerning the oral contract and no evidence of the acts and circumstances surrounding the communications. There is no evidence the parties had a meeting of the minds or that the Firm consented to the terms of the contract. Indeed, Rivas's statement that the parties agreed the Firm "would do

–31–

everything" except write checks is too broad to constitute an agreement to terms. Under this record, we conclude the breach of contract claim was properly dismissed on no evidence grounds.

## CONCLUSION

We affirm the portion of the summary judgment order dismissing Rivas and MCCH's claims for negligence/professional malpractice, gross negligence, and breach of contract, and dismissing the fiduciary duty claims against Reed Pitts and Jan Turner. We reverse the summary judgment order as to all other claims. We remand to the trial court for further proceedings in accordance with this opinion.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

210876F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

RUDOLPH RIVAS, AN INDIVIDUAL AND MCCH 2009 LLC, Appellant

No. 05-21-00876-CV      V.

BRANDON PITTS, AN INDIVIDUAL, LINDA PITTS, AN INDIVIDUAL, REED PITTS, AN INDIVIDUAL, JAN TURNER, AN INDIVIDUAL, AND PITTS AND PITTS, CERTIFIED PUBLIC ACCOUNTANTS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas Trial Court Cause No. 219-03899-2020.
Opinion delivered by Justice Partida-Kipness. Justices Molberg and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **AFFIRM** the portion of the summary judgment order dismissing appellants' claims for negligence/professional malpractice, gross negligence, and breach of contract, and the portion dismissing the fiduciary duty claims against Reed Pitts and Jan Turner. We **REVERSE** the summary judgment order as to all other claims and in all other respects. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 25th day of April 2023.